PRICE *et al. vs.* DOUGLAS COUNTY.

1. There was no error in refusing to quash a *fi. fa.* issued by an ordinary against a defaulting county treasurer because it did not appear that notice, in writing or otherwise, had been given before the issuing of the *fi. fa.*

(*a.*) The processes for bringing defaulting county officers to account, and enforcing the payment of arrearages found to be due from them, have been greatly modified and changed since the act of 1825 (Prince's Dig. 186), and the decision in *Foster vs. Cherokee County*, 9 *Ga.* 185, 186.

2. Where the accounts of a treasurer were examined by the grand jury in order to ascertain his indebtedness, the different conclusions reached by the committee of the grand jury making the examination, as the result of several calculations made, were irrelevant on the trial of an illegality interposed by him to a *fi. fa.* issued by the ordinary against him as a defaulter, and were also the conclusions of witnesses. Besides, the calculations were made on badly kept books, before the errors that abounded in them had been corrected, and the court allowed evidence to show what changes were made in the books in order to rectify their inaccuracies and faults.

3. Where a county treasurer failed to comply with the requirements of the law as to the keeping of his books, accounts and vouchers, and the filing of a statement of his accounts and vouchers, and where an execution was issued by the ordinary against him as a defaulter, he could not take advantage of his own negligence so as to substitute evidence of a lower character for the record which it

was incumbent upon him to make out and deposit. Therefore the tax digest of the county for 1883 and the order of the ordinary assessing the county tax for that year were properly rejected when offered by the treasurer to correct an error alleged to exist in the receipt given by him to the tax collector for a certain amount, by showing that a less amount was raised by the assessment for that year, and that the difference between these amounts would be sufficient to cover the default claimed to exist.

4. Where the execution had been levied only on the property of the treasurer, and not on that of his sureties, there was no error in refusing to permit them to introduce the bond in evidence, or to show that the default occurred before they signed it. The defences peculiar to them as sureties were not then before the court, and would not be concluded by the judgment rendered.

5. The testimony in this case demanded a finding in favor of the county, and the judgment against the defendant was a most lenient one.

January 18, 1887.

Officers. County Matters. Treasurer. Evidence. Principal and Surety. Before Judge HARRIS. Douglas Superior Court. January Term, 1886.

On April 7, 1885, the ordinary of Douglas county issued an execution against D. W. Price, the former treasurer of that county, and the sureties on his bond. It was recited in the *fi. fa.* that Price qualified and gave bond on January 25, 1883; that county orders were issued by the proper authorities to various persons to the amount of $1,813.70; that the county treasurer had the necessary funds in hand to pay these orders, but failed and refused either to pay them or to account for the amount, upon demand by the proper authorities; and that he had made default to the amount named.

Price, the principal defendant, filed an affidavit of illegality to the execution on the following grounds:

(1.) Because he has made no default, but has accounted for and paid over all the funds received by him according to law.

(2.) Because the amount charged against him never came into his hands, but was the result of an erroneous calculation by the ordinary.

(3.) Because orders for a large amount, which had been paid off, went into the hands of the grand jury, who were investigating the defendant's accounts, and were never returned.

(4.) Because he is not indebted to the county any amount whatever, and has no funds of the county in his hands.

(5.) Because the county is indebted to Price $600 on an order, the payment of which the county has refused, and which Price claims as a set-off.

On the trial, the *fi. fa.* issued by the ordinary was read in evidence, and the plaintiff closed. The evidence on behalf of the defendants was, in brief, as follows : A committee of the grand jury had possession of the books, etc., of Price for the purpose of investigating his accounts. One Dorsett was called in by the committee to aid them, and he made numerous alterations and erasures in the books. The defendant, Price, testified that he kept his books correctly ; that a previous grand jury had made an investigation of his accounts and vouchers; that a number of such vouchers were lost and never returned to him ; that they were left in a room with the door open and the windows raised, and he found them badly scattered, some being on the floor and two being found in the yard outside ; that he often made payments on orders and *subpœnas* for the state's witnesses residing out of the county, and set these orders and *subpœnas* aside without making the entries on the books, and these had become lost; that he gave his consent to some of the alterations made on the books, but that many of them were made in his absence and without his consent; that he had vouchers for all the money ever paid out by him ; and that his books, before being altered by the committee, showed all the money ever received by him; that a mistake was made in numbering certain orders, so that two sets of numbers ran from No. 223 to No. 247, but the orders were different in fact, though this gave them the appearance of having been entered twice.

Another witness testified that some of the alterations in the books were made with the consent of the defendant, and that the witness was absent a part of the time and did not know as to the others. A third witness testified that the defendant consented to some of the alterations and objected to others, but on having the matter explained to him, and it appearing that the same items were charged on other books, as he had no vouchers, he consented to the changes.

The evidence for the plaintiff, in rebuttal, was, in brief, as follows: The only alterations made in the books were corrections where amounts had been charged twice. No corrections were made, except such as the defendant consented to, either at once or after explanation. He was given credit in the settlement for all the vouchers he had, and where he had none, he was nevertheless given credit, if it appeared from any source that such vouchers had been issued. All of the stub-books of the ordinary and clerk of the superior court were used for this purpose, and where an order appeared to have been issued, it was allowed Price as a credit. The double-numbered orders were allowed him as credits. A witness, who was a member of the former grand jury who had examined into Price's accounts, testified that the first thing done was to call over all of the vouchers with Price, and have him enter them on his book; that they then proceeded with the investigation; that the vouchers were rolled up and laid in a parcel on the table; that they were absent for a time and the door was left unlocked, but on their return, the vouchers appeared not to have been disturbed. Price had received credit for all the vouchers and had entered them himself.

The books kept by Price were introduced in evidence; also certain orders and receipts and testimony concerning them, which need not be set out in detail here.

The jury found for the plaintiff $1,723.28 principal, with seven per cent. interest from the date of the execution.

The defendant moved for a new trial on the following among other grounds :

(1)–(3.) Because the verdict was contrary to law and evidence.

(4.) Because the court refused to quash the *fi. fa.* on the ground that it did not appear that notice had been given to Price, in writing or otherwise, before the issuing of the execution.

(5.) Because the court rejected evidence offered to show that the committee of the grand jury who examined Price's accounts made several calculations, arriving at different conclusions, and at one time bringing the county in debt to Price for more than $1,300; and that none of the calculations agreed with each other, or with the amount in the *fi. fa.* [It appeared that the amount in the *fi. fa.* was reached after the corrections in the books were made. The court refused to allow testimony as to the conclusions of the committee, but allowed testimony as to what changes had been made in the books, and what such changes amounted to in the aggregate.]

(6.) Because the court rejected from evidence the tax digest for 1883 and the order of the ordinary assessing the county tax for that year. The plaintiff had put in evidence the receipts from Price to the tax collector for that year, amounting to $6,924.23, while the evidence offered would show that only some $4,000 was raised by such assessment, and the difference would be sufficient to cover the default claimed to exist.

(7.) Because the court refused to permit the sureties to introduce the bond in evidence, or to show that the default occurred before they signed it,—no levy having been made on their property.

(8.) Because the court admitted the judgment and *fi. fa.* in evidence, over objections, on the ground that no notice to Price appeared.

The motion was overruled, and the defendants excepted.

C. D. Phillips; J. M. & J. V. Edge, for plaintiffs in error.

T. W. Latham; J. S. James, for defendant.

Hall, Justice.

The affidavit of illegality filed by the county treasurer to this execution raises no issue as to the authority of the ordinary to issue the same, or as to his failure to observe any condition required by law, as to notice or settlement, previous to taking action thereon; and although these questions were discussed at the bar, we decline to express an opinion upon them. If the execution issued, or was proceeding illegally upon any of these grounds, they should have been set up and insisted on in the affidavit, so that the opposite party might have been notified of the objections to this demand he was expected to meet.

(1.) The record puts in issue the fact that the county treasurer is in default, and insists that he has accounted for and paid over all funds received by him.

(2.) It denies indebtedness to the county, or that he has in hand any of its funds.

(3.) That the amount charged against him never came to his hands, and resulted solely from an erroneous calculation made by the ordinary; orders which he had paid off for large amounts, being absent when the calculation was made, having been placed in the hands of the grand jury, while investigating his accounts, and never returned by them to him.

(4.) And lastly, an offer to tender and set off against the county an order for $800 which he held, and which the county had refused to pay.

The jury, under the evidence and charge of the court, found all these issues against the affiant, and returned as due the county $1,723$\frac{26}{100}$ principal, with interest at 7 per cent. from the date of the execution.

A motion was made for a new trial on various grounds,

and refused, and thereupon he excepted to the judgment denying it.

1. The first ground we shall notice is the fourth, and that has, to some extent, been anticipated; if it had been insisted on, as already stated, it should have been set up in the affidavit of illegality, but independently of this, there was no error in refusing, on affiant's motion, to quash the *fi. fa.* because it did "not appear that notice, in writing or otherwise," had been given him before issuing the same. It is true that this was required by the act of 1825 (Prince's Dig. 186), as was held by this court in *Foster vs. Cherokee County,* 9 *Ga.* 185, 186. Since that decision was rendered, the processes for bringing defaulting county officers to account, and of enforcing the payment of arrearages found to be due from them, have been greatly modified and changed (Code, §§523, 524, 525, 563, 909 and citations); and the decision made in this case now under consideration is sustained by *Walden, adm'r, vs. Lee County,* 60 *Ga.* 298; S. C. 68 *Id.* 664, in which it was held that the notice was not a condition precedent to issuing the *fi. fa.* This also disposes of the eighth ground of the motion.

2. The fifth ground of the motion is without merit; the different conclusions reached by the committee of the grand jury who examined affiant's accounts to ascertain his indebtedness as the result of several calculations made, could have thrown no possible light upon any issue on trial, and was wholly irrelevant, if they had not been objectionable upon other grounds, such as being the conclusions of witnesses rather than those to be reached by the jury. Besides, these calculations were made upon badly kept books, before the errors that abounded in them had been corrected, and the court had allowed evidence to go to the jury showing what changes had been made in the books in order to rectify their inaccuracies and faults.

3. The sixth ground of the motion complains of error in rejecting the tax digest for 1883 and the order of the ordinary assessing the county tax for that year. It is in-

sisted that these documents would have corrected an error in the receipt given by the affiant to the tax collector for $6,924.23, by showing that only some $4,000 was raised by the assessment for that year, and that the difference between these amounts would be sufficient to cover the default claimed to exist. The evidence in the case shows that the entire account, including these matters, had been gone over time and again; that in keeping his books, and in taking his vouchers and receipts, the law prescribing how this should be done had not been followed; that these books were faulty in many respects and had to be changed; that affiant was present when many of these changes were made and assented to them; that some were made during his absence, and when the account was completed, he went over it and assented to all of them; resort was had to other sources than his books, as the stubs in the books of the ordinary and the clerk of the superior court, together with the minutes of those two courts, in order to approximate the standing of the account between him and the county; that every item he claimed on account of lost or missing orders, receipts or vouchers, when supported by any kind of testimony, was allowed; and that every alleged mistake on account of double charges, etc., was corrected. The duties of this officer are carefully specified by law, and among others, he is required to keep books; to take and preserve vouchers; to pay orders and take receipts for the amount paid and carefully file them away; the books showing all receipts, stating when, from whom and on what account received, and all amounts paid out, when, to whom and on what account paid. They must also contain a full description of all county or other forms of indebtedness as they are presented, together with a copy of the orders of the ordinary levying county taxes. This account thus kept, together with the vouchers sustaining its items, he is compelled to furnish to the grand jury at the first session of the superior court of each year, and must make to them a full statement of the county treasury up to the

time; he is further required, on the second Monday in January of each and every year, to file with the ordinary a full statement of his account, accompanied by his vouchers, for the preceding year, together with his estimate of the indebtedness of the county for the ensuing year, and the means of providing therefor, and to place his books before either of these bodies for examination whenever called on. He must appear before the grand jury or ordinary to render an account of his actings and doings as county treasurer, and to exhibit his books and vouchers whenever notified, and must publish at the court-house door, and in a public gazette, if one is published in the county, a copy of his annual statement to the ordinary. His books, when full, together with the vouchers or other files relative thereto or connected with the office, are to be deposited in the office of the ordinary, and afterwards are to be a part of his records. Code, §553, sub-sections 4 to 9, inclusive, 559.

Had the affiant observed these requirements, there would have been no necessity to resort to such testimony as that offered and rejected; that they were not observed was attributable to his own negligence, of which he should not be permitted to take advantage, and thereby to substitute evidence of a lower character for the record it was incumbent upon him to make out and deposit; that this cannot be done generally, or without some unavoidable casualty, is scarcely debatable. Nothing was shown to take this case out of the rule excluding such testimony, and we see no error in rejecting it.

4. The court was clearly right in rejecting the evidence offered set out in the seventh ground of the motion. No levy had been made on the property of either of affiant's securities; they had not joined in this affidavit of illegality filed by him, and would not have been precluded by the judgment rendered thereon from subsequently setting up any defence that belonged to them peculiarly as his sureties.

5. The verdict in this case was a most lenient one. The testimony imperatively demanded a finding in favor of the county. In concluding this opinion, it is perhaps well to remark, in order to avoid misapprehension, that it is not our purpose to commend or approve the indulgence extended by the county officials to this delinquent treasurer. Daily observation impresses us with the necessity of holding public agents, especially those entrusted with the collection, safe-keeping and disbursement of its money, to a rigid accountability.

Judgment affirmed.