### GREER *v.* TURNER COUNTY *et al.;* and *vice versa.*

1. The chairman of the board of roads and revenues of Turner County has authority to issue an execution against any person holding county funds collected by the county for any purpose.

(*a*) It is not essential to the validity of such an execution that it be set out therein from whom the defendant in fi. fa. received the money, what particular money it was, or how it was county money.

2. The execution may be issued against any person, whether an official or not, holding county money, and without suit or notice of any kind.

3. The Civil Code, § 6001, requires claims in behalf of the officials therein specified, for public services in relation to which existing laws provide no compensation, to "be submitted to the grand juries of the superior courts of the respective counties at the spring term." This means at the spring term immediately succeeding the year during which such public services were rendered. Therefore a grand jury at a term subsequent to such spring term, has no legal power to pass upon and allow such claims, and to thereby authorize the county treasurer to pay them. Accordingly, such a payment would be invalid, and an execution would lie in behalf of the county against the official or person receiving the same.

4. As it appears from the face of the account presented to and allowed by the grand jury (there being no other evidence on the subject) that the items for expenses and attorney's fees incurred by the ordinary of Turner county in responding to a rule issued against him by the prison commissioners were not connected with any public service rendered the county by him, the grand jury were not legally authorized to allow such items.

5. The amount claimed by such ordinary as compensation for services rendered during the year 1908, in performing the duties imposed upon him by the adoption of the alternative road law system for Turner county, was duly allowed by a grand jury as the statute provides, and, under the circumstances of the case, was properly paid by the county treasurer; and therefore the county commissioners were not authorized to issue an execution against the ordinary for the sum so paid him.

6. The special act for Turner county, approved August 18, 1906 (Acts 1906, p. 459), in so far as it is thereby attempted to provide a different method from that established by the general law embodied in the Civil Code, § 6001, for the compensation of certain officials where no fees are fixed by law, is void, because in conflict with that provision of the

constitution declaring that "no special law shall be enacted in any case for which provision has been made by an existing general law."

AUGUST 17, 1912.

Affidavit of illegality of execution. Before Judge Frank Park. Turner superior court. March 16, 1911.

W. A. Greer was the ordinary of Turner county during the years 1907 and 1908, and as such officer performed during those years certain extra public services and incurred certain expenses in behalf of the public, in relation to which the existing laws provided no compensation. He rendered an itemized bill for such services and expenses, properly verified, to the grand jury of such county at the spring term of the superior court, 1909. That grand jury made the following recommendations: "In view of the fact that our county finances are deficient several thousand dollars, we hereby recommend the issuing and selling of $40,000 of bonds for the following purposes: For Public Roads, $5,000.00; For Paupers, $1,200.00; For Present Indebtedness, $25,000.00; For Jail, $1,500.00; For Bridges, $3,000.00; For General Purposes, $4,-300.00. We also recommend that W. A. Greer, ex-ordinary, be paid the sum of $1,000 for services rendered in 1907 and 1908 in overseeing roads of this county, and the sum of $40 for expenses incurred in going to Atlanta in response to rule nisi issued by the Prison Commission of Georgia, and also the sum of $50 paid for attorney's fees in connection with said rule nisi. 'Exhibit 1' hereto attached contains a statement of these amounts, and we recommend that the county commissioners pay the same out of the general funds as mentioned above in connection with the issue of bonds." The attached exhibit showed an item of $500 due December 31, 1907, for one year's service attending to the duties imposed by law upon W. A. Greer, ordinary, by the adoption of the alternative road law system, and a like amount due December 31, 1908, for similar services rendered during that year; also items of $40 and $50 due September 9, 1908, for expenses and attorney's fees in respect to the matter as stated in the foregoing recommendation. Subsequently to such recommendation, it not appearing that the bonds were issued by the county, the board of commissioners of roads and revenues, after levying taxes for all necessary and proper purposes, levied a sufficient amount under the head, "To pay any other lawful charge against the county," to pay the amount of Greer's claim and all other similar charges; and there was, for

the purpose of paying "any other lawful charge against the county," a sufficient amount of taxes collected and paid into the treasury of the county to cover the claim of Greer and all other similar charges. Afterwards Greer presented his claim to the treasurer of the county and demanded payment thereof; and the "treasurer, having the said fund in his hands and being satisfied that [Greer's claim] was a lawful charge against said fund, without further order paid" Greer, on December 27, 1909, the amount of his claim, viz., $1,090, he giving the treasurer a receipt for the same. On April 5, 1910, an execution was issued by the board of commissioners of roads and revenues of the county against Greer for the sum paid him by the treasurer, with interest thereon from the date of payment, which amounts, the execution recited, "at our court of the board of commissioners of roads and revenues of said county, to wit, on the 5th day of April, 1910, Turner County as plaintiff recovered against said W. A. Greer of said Turner county, as county money in his hands and collected for county purposes, and which sums the said W. A. Greer fails and refuses to pay over, although having been, on the 21st day of March, 1910, notified in writing and commanded to pay the same, and the said W. A. Greer refused to do so." After the levy of the execution upon property of Greer, he filed a written motion in the office of the clerk of the superior court to quash the execution and to dismiss the levy on various grounds. He also filed an affidavit of illegality, which was demurred to by the plaintiff in fi. fa., which also ·traversed the grounds of the same. Upon the trial the court overruled the motion to quash the execution and to dismiss the levy, sustained the demurrer to some of the grounds of the affidavit of illegality, and overruled it as to others. By agreement of counsel the case was submitted to the judge of the superior court without the intervention of a jury, upon an agreed statement of facts, the substance of which is above stated. The court rendered a judgment, "that the plaintiff recover of and from the defendant the sum of five hundred and ninety ($590.00) dollars; that is to say, the $500.00 allowed for extra services during the year 1907, and the $40.00 allowed for expenses in going to and from Atlanta and remaining there in response to the rule nisi of the Prison Commission, and the $50.00 paid out as attorney's fees in connection with the said rule nisi, together with interest thereon at the rate of

seven per cent. per annum from the date the same was paid to him by the treasurer, and all costs of this case; and the execution levied is ordered to proceed accordingly for these amounts." Greer excepted, assigning error upon the overruling of his motion to quash the fi. fa. and to dismiss the levy made thereunder, upon the sustaining of certain grounds of the demurrer to the affidavit of illegality, and upon the judgment of the court ordering the fi. fa. to proceed against him for the sum of $590. The County of Turner sued out a separate bill of exceptions, in which it assigned error upon the sustaining of the illegality to the extent of $500, and so adjudging that Greer was entitled to that sum as embraced in his account against the county for extraordinary services rendered by him as ordinary from January 1, to December 31, 1908.

*W. H. McKenzie* and *J. H. Tipton,* for Greer.

*Perry, Foy & Monk, A. J. Davis,* and *W. T. Williams,* contra.

Fish, C. J. (After stating the foregoing facts.)

1. We will first deal with the assignment of error made by Greer upon the overruling of his motion to quash the execution and to dismiss the levy made thereunder. The grounds of this motion were in substance as follows: (1) Because the execution was issued and signed by "D. H. Davis, Chairman of Board of Roads and Revenues of Turner County, Georgia," and no sufficient facts were set forth in the execution to show any authority or jurisdiction either in Davis as chairman of the board, or in the board itself, to issue the execution. (2) Because the execution fails to set forth sufficient facts to show Greer's liability to Turner County for any portion of the sum for which the execution was issued, in that it does not appear from the execution in what way, or on what account, the sum of $1,090 was due by Greer to the county, and in that it does not appear from whom Greer received the money, nor what particular money he received, nor that the money was county money, nor for what county purpose he collected it. (3) Because the execution was illegal upon its face as having no foundation in law or in fact.

The Civil Code, § 522, gives ordinaries authority to compel persons having county money in their hands, collected for any purpose whatever, to pay over the same; and § 523 provides that ordinaries shall issue executions against such persons and their securities, if

any, for the full amount appearing to be due, as the comptroller-general issues executions against defaulting tax-collectors. The act of 1908 creating the board of commissioners of roads and revenues for Turner County (Acts 1908, p. 354) gives to such board jurisdiction over all county matters vested by law, at the time of the passage of the act, in the ordinaries of the various counties of the State having no board of commissioners of roads and revenues. The act also authorizes the chairman of such board as such to issue an execution of the character of the one involved in this case. See also *County of Pulaski* v. *Thompson,* 83 *Ga.* 270 (3), 273 (9 S. E. 1065). The commissioners had authority to issue an execution against any person holding county funds. Code sections above cited; *Hobbs* v. *Dougherty County,* 98 *Ga.* 574 (25 S. E. 579). The execution recited that the sum for which it was issued was due by Greer to Turner County "as county money in his hands and collected for county purposes." It was not necessary that the execution should set out in detail from whom Greer received the money, what particular money it was, or why and how it was county money. There was no merit, therefore, in the motion, and the court did not err in overruling it.

2. Did the court err in sustaining certain grounds of demurrer to the affidavit of illegality? These grounds were in substance as follows: (1) Defendant had never had his day in court, had never been served with any process or other notice of the pendency of any suit whereon the execution was based, nor did he waive service, nor appear and defend any suit; and moreover no suit of any kind had ever been brought against him for the money for which the execution was issued. (2) At the time the execution issued against him, defendant was a private citizen and was not a county official of Turner county, nor as such the holder of any money belonging to the county. The other grounds of illegality which were stricken involved the same points upon which we have ruled on the motion to quash the execution and dismiss the levy. The court properly sustained the demurrer to the two grounds of the illegality above stated. Under the Civil Code, §§ 522, 523, 525, an execution may be issued against any person, whether an official or not, holding county money, and without suit or notice of any kind. *Price* v. *Douglas County,* 77 *Ga.* 163 (3 S. E. 240). "Prima facie, such an execution is to be taken as expressing and represent-

ing a real debt for the county taxes; and it is not for the county to support it by evidence, but for the defendant or defendants to meet and overcome it by evidence." *Bridges* v. *Dooly County, 83 Ga. 275* (9 S. E. 1085). As we have already stated, such an execution may be issued against any person, whether he be an official or not, who has in his hands county money collected by the county for any county purpose. Civil Code, §§ 525, 523. In *Hobbs* v. *Dougherty County,* supra, it was held that it was not necessary for the person holding such county funds to be an official of the county, to authorize the issuance of an execution against him, and that accordingly, upon the refusal of a banker to pay over money which had been "collected for any county purpose whatever" and deposited with him, either on general or special deposit, by the county treasurer or tax-collector, the ordinary or other proper county authorities could, under the code sections cited above, issue an execution against the banker for the purpose of collecting from him the amount so placed in his hands, and he stood upon the same footing as such officers upon refusal to pay the funds to the county when demanded of him.

3. Did Greer, the defendant in fi. fa., under the facts of the case, have in his hands any county money, collected for any county purpose, which he refused to pay upon demand? The answer to this question depends upon whether, in the circumstances, he was legally entitled to receive from the treasurer the money paid him. The Civil Code, § 6001, declares: "The ordinaries of this State, who by law are vested with the management of the county business, and for whom no compensation is provided, and the sheriffs and clerks of the superior courts, for public services in relation to which existing laws provide no compensation, shall be compensated as follows, to wit: Such officers shall state their respective claims in writing and make affidavit of the correctness and justice thereof, which so made out and verified shall be submitted to the grand juries of the superior courts of the respective counties at the spring term, and said grand juries may, in their discretion, require other proof of the justness and correctness of said claims, and, when satisfied that such claims are just and correct, may allow the sum claimed, or so much thereof as they may deem right and proper; and when so allowed, the ordinary of such county, or other authority levying county taxes, shall assess so much with the other county

taxes as will pay the same, which, when collected and paid over to the county treasurer of such county, shall be paid by him to the parties entitled thereto, without further order, he taking a proper receipt therefor. The compensation provided for in this section shall be in full of all compensation of said officers for such services." Greer's account against Turner County was for what he claimed to be services rendered by him for the county during the years 1907 and 1908, in relation to which no existing law provided compensation. He submitted the account in writing and properly verified to the grand jury of the superior court of that county at the 1909 spring term thereof, when such jury recommended the payment of the entire account, but further recommended "that the county commissioners pay the same out of the general funds as mentioned above in connection with the issuance of bonds." This same grand jury had recommended the issuance and sale by the county of bonds to the amount of $40,000, for certain specified purposes, among which was an item of $4,300 "for general purposes." In our opinion, the recommendation by the grand jury that Greer's account be paid sufficiently indicated the allowance by them of the sum claimed by him. The first item of his account was as follows: "Dec. 31, 1907. To one year's service attending to duties imposed by law upon said W. A. Greer by adoption of Alternative Road Law System, beginning Jan. 1, 1907, and ending Dec. 31, 1907, $500.00." The section of the code quoted above requires claims in behalf of the officers therein specified, for public services in relation to which existing laws provide no compensation, to "be submitted to the grand juries of the superior courts of the respective counties at the spring term." This evidently means at the spring term immediately succeeding the year during which such public services were rendered, as for various good reasons such claims should not be allowed to accumulate against counties, and such we believe was the intention of the General Assembly in enacting the statute. It follows that the grand jury, at the 1909 spring term of the court had no power, under the statute, to pass upon and allow the claim for services which were rendered in 1907. It appeared from the face of the account that the grand jury which allowed it had no legal authority to do so; and the treasurer who paid such account was bound to know, when it was presented to him for payment, that the allowance of it by that grand jury was

unauthorized. This being true, the payment by the treasurer was illegal, and therefore Greer received $500 of county money to which he was not legally entitled under the proceedings in accordance with which it was paid him; and the trial court properly held that the execution should proceed for this amount.

4. Two other items of the account were as follows: "Sept. 9, 1908. To expenses incurred in going to and from Atlanta and remaining there in response to rule nisi issued by the Prison Commissioners of Georgia to show cause why convict camp of Pinson & Conoly should not be abolished, $40.00." "Sept. 9, 1908. To amount paid to attorney in the matter of rule nisi issued from Prison Commission of Georgia to show cause why convict camp of Pinson & Conoly should not be abolished, $50.00." The record entirely fails to disclose more as to the nature of the proceeding before the Prison Commission than appears upon the face of these items of the account, and from them it is shown that the proceeding was to abolish a designated convict camp of named individuals, presumptively for some alleged reason affecting the legality or propriety of such camp, and not for the purpose of depriving the county of convicts. It follows that as the expense and attorney's fees embraced in the account appear not to have been connected with any public service rendered by Greer, as ordinary, for the county, the grand jury was without legal authority to allow them; and the court below properly held also that the execution should proceed for the sum of such items.

5. The remaining item of the account was: "Dec. 31, 1908. To one year's services attending the duties imposed by the adoption of the Alternative Road Law System from Jan. 1, 1908, to Dec. 31, 1908, $500.00." The grand jury, at the spring term, 1909, term of the court, was legally authorized to pass upon this claim, and, if satisfied from the evidence submitted to them that it was just and correct, to allow it. This they did, though they recommended its payment out of the amount "of the general funds" to be raised, together with other amounts for specified purposes, by the issuance and sale by the county of bonds in a given sum. The grand jury went beyond their province and authority in recommending that the account be paid out of any given fund. The statute provides that after such a claim has been allowed, the county authority whose duty it is to levy county taxes "shall assess

so much with the other county taxes as will pay the same, which when collected and paid over to the county treasurer of such county, shall be paid by him to the parties entitled thereto, without further order, he taking a proper receipt therefor." Civil Code, § 6001. No county bonds were issued, and the county commissioners, after the allowance of Greer's account and after levying taxes for all necessary and proper purposes, levied a sufficient amount, under the head "To pay any other lawful charge against the county," to pay the amount of Greer's claim and all other similar charges, and there was, for the purpose of paying "any other lawful charge against the county," a sufficient amount of taxes collected to cover the claim of Greer and all other similar charges. Out of the fund raised for such purpose the treasurer paid Greer's account upon presentation, after it had been allowed by the grand jury, as already stated. We hold that this item of $500 for services rendered during the year 1908 was properly paid by the treasurer to Greer; and the court below did not err in so ruling in sustaining the illegality as to that sum. Our decision in this respect does not conflict with anything held in *Lumpkin County* v. *Williams,* 94 *Ga.* 657 (21 S. E. 849), or in *White County* v. *Bell,* 98 *Ga.* 400 (25 S. E. 558), since, after this claim was passed on and allowed by the grand jury, the county commissioners, after levying taxes for all necessary and proper purposes, levied a sufficient amount under the head, "To pay any other lawful charge against the county," to pay the amount of this claim of Greer's and all other similar charges, and there was a sufficient amount of taxes collected under this head to pay all such claims and charges.

6. Counsel for the County of Turner contend that the item of $500, with which we have just been dealing, was paid to Greer without authority of law, for the reason that the act of August 18, 1906 (Acts 1906, p. 459), requires that payment for such services as were embraced in this item should be made by the treasurer of the county on a warrant drawn by the ordinary, and that no such warrant was issued. Civil Code § 6001 is a general law making provision for the compensation of certain officials where no fees are fixed by existing laws. The special law for Turner County, above referred to, in so far as it seeks to provide a different method from that established by such general law, for the payment of such compensation, is in conflict with the declaration that "Laws

of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." Civil Code, § 6391; *Atkinson* v. *Bailey,* 135 *Ga.* 336 (69 S. E. 540).

*Judgment affirmed in both cases. All the Justices concur.*