## ROBERTS *v.* DANCER, ordinary, for use, etc. (two cases).

1. Power to issue execution against a defaulting county treasurer is vested in the ordinary, or in county commissioners if the fiscal affairs of the county are administered by them.

2. An execution against a defaulting county treasurer should be issued in the name of the county; but if issued in the name of the ordinary for the use of the county, such irregularity is an amendable defect, and does not render the process void.

3. Where the statute creating a board of commissioners of roads and revenues of a county provides for a clerk, an execution issued by him in the name of such board, and under an order duly rendered by it directing him to issue the same, is not void because the members of the board do not sign the execution.

4. The act creating the board of commissioners of roads and revenues for the County of Miller (Acts 1905, p. 569), provides that three commissioners must concur in the passage of any order. An affidavit of illegality to an execution against a defaulting county treasurer, issued by order of the board, on the ground that the board's order was not concurred in by three members, presents an issue of fact which should be submitted to a jury.

5. Where a county treasurer receives from the county authorities, by virtue of his office, money which has been illegally borrowed by them, and

disburses the same for current expenses of the county, and the illegal loans are repaid from money coming from taxes or other legitimate sources, he is not entitled to commissions for handling the illegally borrowed money, to be paid out of county funds proper.

6. Even if the doctrine of *Shumate* v. *McLendon,* 120 *Ga.* 396, be applicable to the levy of a fi. fa. in favor of a county, an affidavit of illegality on the ground that the fi. fa. should be arrested because the property levied on was encumbered by security deed, which did not aver that the encumbrance was prior to the date of the treasurer's bond, was insufficient in law.

7. The statute authorizing the summary issuance of an execution against a defaulting county treasurer by the ordinary or county commissioners, as the case may be, accords to the defendant the right to test his liability by affidavit of illegality, returnable to the superior court of the county in which the fi. fa. issues, and is not unconstitutional as denying the defendant due process of law.

DECEMBER 15, 1915.

Affidavit of illegality of execution. Before Judge Worrill. Miller superior court. October 30, 1914.

An execution was issued by the clerk of the board of commissioners of roads and revenues of Miller county against B. B. Roberts as principal, and A. Sheffield, J. C. Cook, G. W. Carter, and J. W. Bailey as sureties, in the principal sum of $361.38, "which is the balance found to be due by said B. B. Roberts, treasurer of said county, same being illegal commissions charged and deducted by him, and other sums not accounted for." The execution was levied upon certain property as belonging to B. B. Roberts, who interposed an affidavit of illegality. The issues formed thereby were referred to an auditor, who made his report, to which exceptions of law and fact were filed by the defendant. On the hearing of the exceptions to the auditor's report, and after the affidavit of illegality had been amended by adding another ground, the plaintiff in fi. fa. made a written motion to strike the illegality on the ground that the same was insufficient in law, and contained no legal ground why the fi. fa. should not proceed. The motion was sustained, and the court rendered a judgment dismissing the illegality, and directing that the fi. fa. proceed. Exception is taken to this judgment.

*W. I. Geer,* for plaintiff in error. *Bush & Stapleton,* contra.

EVANS, P. J. (After stating the foregoing facts.)

1. The court dismissed the illegality on the ground that it was insufficient in law, and thus eliminated the reference of the

case to the auditor, and all procedure connected therewith. The only question presented by the assignments of error is the sufficiency of the grounds of the affidavit of illegality to raise an issue. One ground was that the defendant had never had his day in court. It is no ground to quash a fi. fa., issued by the county commissioners against a defaulting county treasurer, that it does not appear that notice in writing or otherwise had been given before the issuing of the fi. fa. *Price* v. *Douglas County*, 77 *Ga.* 163 (3 S. E. 240); Civil Code (1910), § 585; *Arthur* v *Commissioners of Gordon County*, 67 *Ga.* 220.

2. The fi. fa. issued in the name of W. C. Dancer, ordinary, for the use of Miller county. The fi. fa. should have issued in the name of Miller County; but this is a mere irregularity, which is curable by amendment. *Lamb* v. *Dart*, 108 *Ga.* 602 (34 S. E. 160).

3. The form of the fi. fa. is attacked on the ground that if the commissioners had authority to issue the execution, it is void because it is signed only by the clerk of the board, whereas it should have been issued and signed by the members of the board. The act creating the board of commissioners of roads and revenues of Miller county expressly provides that the clerk of the superior court shall be, by virtue of his office, clerk of the board of commissioners. Acts 1905, p. 569. The issuing of an execution is a clerical act, and, if done under order and judgment of the commissioners, it is not void because the members of the board failed to sign it. *Lamb* v. *Dart,* supra. There is no issue made in the illegality that the fi. fa. was signed by the clerk without authority from the board of commissioners of roads and revenues, other than as referred to in the succeeding division of the opinion.

4. It was alleged that the action of the board of roads and revenues in directing the fi. fa. to issue was not concurred in by three of the commissioners, that the minutes disclosed that two of the commissioners voted for and one against the resolution directing the fi. fa. to issue, and that three commissioners did not concur in the order. The act creating the board of commissioners of roads and revenues for Miller county provides that the board shall consist of five persons, one of whom shall be the ordinary, who by virtue of his office shall be chairman of the board. In the 5th section it is provided: "That three of said board shall con-

stitute a quorum for the transaction of business, and that three must concur in order to pass any order or let any contract or grant or allow any claim against the county." Acts 1905, p. 569. The affidavit of illegality distinctly made the issue that the order or judgment by virtue of which the fi. fa. against the county treasurer and the sureties on his bond was issued was illegal, because it was not concurred in by three members of the board as required by the act. The demurrer to the illegality admitted this allegation to be true; and if in point of fact the judgment was not concurred in by three members of the board, it was void.

5. In the 8th, 16th, and 17th grounds of illegality it was set up that the money which the county was seeking to collect from the defendant was for commissions retained by him out of money illegally borrowed by the county authorities, and·by them placed in his hands as treasurer, and was not for misappropriation of county funds. He alleged, that the commissioners of roads and revenues incurred debts without the assent of two thirds of the voters of the county, and illegally borrowed $21,715.46 with which to pay these debts; that when this sum was placed in his hands as treasurer by the commissioners, he then and there from this sum took out his commissions; and that he did not pay himself any commissions on the money thus illegally borrowed out of county funds, but out of the money illegally borrowed by the commissioners and received by him as treasurer. In support of this proposition reliance is had upon the case of *Wood* v. *Commissioners of Greene County*, 60 Ga. 556. In that case the county commissioners issued a fi. fa. against the county treasurer for an alleged sum as due the county. The defendant by affidavit of illegality denied liability, and alleged that the amount claimed to be due the county was for commissions retained by him out of money received by him as treasurer, but illegally borrowed by the county authorities. It was held: "On money borrowed without authority of law, whether by the ordinary, the county commissioners, or the county treasurer, no commissions can be retained by the county treasurer out of the county funds; but retaining commissions out of such borrowed money affects the lenders, and not the county, as the county, in the absence of a statute to authorize borrowing, is not bound for any borrowed money which is not applied to its use. If the treasurer has used county funds

proper, either to compensate himself for handling money illegally borrowed, or to repay the lenders beyond the sums actually expended for the benefit of the county, he is liable for any deficit thus occasioned." The holding that the treasurer might retain his commissions from the money illegally borrowed by the county commissioners and turned over to him, before turning the same into the county treasury, and that he would be exempt from liability to the county for the money so retained, does not only seem to be unsound in principle, but opposed to the fundamental basis of liability as recognized in prior decisions. In *Wilkinson* v. *Bennett,* 56 *Ga.* 290, it was held that a tax-collector who has collected taxes under orders of the ordinary levying county taxes can not urge the invalidity of such orders as an excuse for not paying over the money to the county. It would seem that if a tax-collector can not set up the invalidity of the process by virtue of which he has received funds as belonging to the county, a treasurer likewise would be estopped, as against the county, from setting up that the fund which he received by virtue of and under color of his office was not money belonging to the county. The money alleged to have been unlawfully borrowed was received by him from the county commissioners, and not from the lenders. The sum which came into his hands was received as an entirety, and he had no right to toll the same with his commissions, treating only what was left as county funds. The proposition seems to be generally accepted that a treasurer who actually receives, in his official capacity, money from other officers of the county is estopped from setting up that the money did not belong to the county, or that it had been irregularly collected, or exacted without authority of law. 11 Cyc. 453; County of Mahaska *v.* Ingalls, 14 Iowa, 170; Seneca County *v.* Allen, 99 N. Y. 532 (2 N. E. 459); Coleman *v.* Pike County, 83 Ala. 326 (3 So. 755, 3 Am. St. R. 746). The precise question was considered by this court in *Mason* v. *Commissioners,* 104 *Ga.* 35 (30 S. E. 513), and Mr. Justice Little, speaking for the court, at page 45 said: "Having collected money by reason of loans made to the county under authority of the board of commissioners, the treasurer is estopped to question the validity of the authority under which the money was so collected. To rule that the treasurer, after having received the money, could set up the invalidity of the authority by which it was collected, would, in

the language of Jackson, Chief Justice, in the case of *Watts* v. *Colquitt,* 66 *Ga.* 492, 'seem to outrage all reason and principle, as well as the clear public policy to allow no agent of the public to dispute the legality of the means by which he collects money for the public, or for any citizen virtute officii.' This principle is so well supported by reason, and so firmly established by authority, that a further elaboration of the doctrine is deemed unnecessary." The learned Justice then proceeds to collate a number of authorities on that subject. Not only do we think that the ruling in the *Wood* case is not binding upon this court, because it is in opposition to the older authority, but, as the decision was rendered prior to January 1, 1897, it is not binding upon a decision rendered after that date and concurred in by at least five Justices. Civil Code (1910), § 6207. The county authorities had no right to raise money in the manner set up in the affidavit of illegality. But after the treasurer received such funds and repaid the loan out of money coming from the collection of taxes or from other legitimate sources, he was not entitled to commissions for receiving and disbursing the money illegally borrowed. The compensation of a county treasurer is a certain percentage on the county funds received and paid out by him. As was said in *Hall* v. *County of Greene,* 119 *Ga.* 253, 255 (46 S. E. 69): "It was not the intention of the General Assembly, in fixing the compensation of county treasurers, to have the public moneys pay toll more than twice. To permit the treasurer to take out $2\frac{1}{2}\%$ on $1,000 borrowed to pay current expenses of the county, as commissions on money received, another $2\frac{1}{2}\%$ as the $1,000 is expended, another $2\frac{1}{2}\%$ as the taxes come in from the public, with which the loan is repaid, and still another $2\frac{1}{2}\%$ when the $1,000 is repaid to the lender, would be to tax the same fund four times with payment of commissions, when it is plainly the intention of the law that he should receive commissions only twice,—when the money, the lawful income of the county, is received and when it is paid out." To allow the treasurer's contention for commissions as set up in his affidavit of illegality would be to toll doubly the public funds to the extent of the illegally borrowed money, which can not be done.

6. There is nothing in the ground of illegality which sets up that the fi. fa. is illegally proceeding, because it has been levied

upon property of the defendant in fi. fa. encumbered by security deed. Even if the principle announced in *Shumate* v. *McLendon,* 120 *Ga.* 396 (48 S. E. 10), in reference to the levy of fi. fas. upon property encumbered by security deed, be applicable fo fi. fas. proceeding in the name of the State or any of its political divisions, it is not controlling here, for the reason that it is not stated that the security deed is anterior in date to the bond of the county treasurer, and under the statute the treasurer is bound, by virtue of his bond, for the payment of any liability arising from the breach of his bond. Civil Code (1910), § 572.

7. In his amendment the county treasurer alleges that the statute upon which the county commissioners based their right to issue the fi. fa. against him is unconstitutional, because it makes no provision for a hearing by way of affidavit of illegality or otherwise. This point is not tenable. The statute provides that the ordinary shall have authority to compel all persons who have or may have in their hands any county money, collected for any county purpose whatever, to pay over the same, and on failure to pay the same such ordinary shall issue executions against such persons and their securities, if any, for the full amount appearing to be due. If such executions shall issue for too much, or if the defendant denies under oath owing any part thereof, he may, by filing an affidavit of illegality according to the rules of law governing the filing of affidavits of illegality, cause an issue to be formed thereon, which shall be tried by a special jury at the first term thereafter. Civil Code (1910), §§ 522, 523, 524. The execution provided for in these sections may be issued against any person, whether an official or not, holding county money; and such official will have the right to contest the same by affidavit of illegality as therein provided. *Arthur* v. *Commissioners,* supra; *Greer* v. *Turner County,* 138 *Ga.* 558 (75 S. E. 578). Full opportunity is thus accorded the treasurer to contest with the county the amount claimed to be due, and for which execution has issued.      *Judgment reversed. All the Justices concur.*