*W. H. Gurr,* for plaintiff in error.   *R. R. Jones,* contra.

MASSACHUSETTS BONDING & INSURANCE COMPANY *v.*
BOARD OF COMMISSIONERS OF RICHMOND
COUNTY *et al.*

No. 7608.   FEBRUARY 28, 1931.

*Jones, Evins, Powers & Jones,* for plaintiff.
*Pierce Brothers,* for defendant.

ATKINSON, J. ■ The controversy relates only to twenty "per cent. interest" and "attorney's fees," and the proceeding is as provided for under Civil Code §§ 585, 1187. It is not under §§ 522, 523, 524, which have no reference to penalty or attorney's fees. It has been held that, after levy of an execution issued under the three sections last mentioned, illegality is an available remedy, *Roberts* v. *Dancer,* 144 *Ga.* 341 (87 S. E. 287). Also that if the execution provided for under those sections has not been levied, illegality is not available, but injunction is the remedy. *Ben Hill County* v. *Massachusetts Bonding &c. Co.,* 144 *Ga.* 325 (87 S. E. 15). But what is the remedy of a treasurer or his bondsmen when the execution is issued under §§ 585 and 1187? It is urged that injunction will not lie, because the bondsman of the treasurer in question has an adequate remedy at law by affidavit of illegality, as provided for in the act of 1915 (Ga. L. 1915, p. 55; Code (Park) § 1191(a), (Michie) § 1191(1). Code § 585 provides: "When the county treasurer at any time fails to pay any order which is entitled to payment, or other legal demand upon him, or to pay any balance that may be in his hands to his successor, or to the person entitled to receive it, the ordinary may issue execution against him and his sureties for the amount due, as against a defaulting tax-collector." Code § 1187 provides: "If any collector shall fail to settle his accounts with the comptroller-general in terms of the law, he shall issue execution against him and his sureties for the principal amount, with interest at the rate of twenty per cent. per annum on said amount: Provided, that if upon a final settlement it should appear that said collector was entitled to credits at the time he is required by law to settle, the comptroller-general may allow the same, and charge such interest only on the amount for which the collector is in default, together with all the costs and attorney's fees incurred by reason of the issuance of said execution." The act of 1915, supra, provides: "That whenever the comptroller-general shall issue an execution against any defaulting tax-collector and the sureties on his official bond, as set forth in section 1187 of the Code of Georgia, vol. 1, 1910, the said tax-collector or any surety on his official bond shall have the right, at any time after the issuance of said execution and before a sale thereunder, to file an affidavit of illegality against said execution, which said affidavit of illegality shall state any matters of defense which would be

available in denial either of the alleged default or the amount thereof as stated in said execution, and which said affidavit of illegality shall be returned to be tried in and disposed of by the superior court of the county in which said tax-collector held office, in the same manner as provided by law for the trial and disposition of such issues." Prior to the act of 1915 it was held that illegality was not available, but injunction was the only remedy of the bondsman of a tax-collector to resist an execution issued under Code § 1187. *Webb* v. *Newsom,* 138 *Ga.* 342 (75 S. E. 106). See also *Gaulden* v. *Wright,* 140 *Ga.* 800 (79 S. E. 1125). Upon the same principle a similar ruling might have been made in regard to the bondsmen of a treasurer to resist an execution issued under § 585. The act of 1915 made provision for illegality as a remedy to resist execution under § 1187, but its provisions did not extend to § 585. Consequently that act did not provide a remedy by illegality to the bondsmen of a treasurer; and under the principle pronounced in *Webb* v. *Newsom,* supra, injunction would be an available remedy to a bondsman of a treasurer to resist an execution against him. The case of *Lamb* v. *Dart,* 108 *Ga.* 602 (34 S. E. 160), is a physical precedent where the treasurer was afforded the remedy of illegality, but no question was there raised or decided as to availability of such remedy, and on that point the decision is not controlling.

■ The defalcations by the clerk of the treasurer occurred at different times, and interest at twenty per cent. per annum was calculated from the dates of the several defalcations, and the sum of each defalcation and interest so calculated constituted the amount for which the execution was issued against the treasurer and his bondsman. The question arises, from what date the interest should have been calculated? The execution was issued under the Civil Code, §§ 1187 and 585. § 1187 declares: "If any collector shall fail to settle his accounts with the comptroller-general in terms of the law, he shall issue execution against him and his sureties for the principal amount, with interest at the rate of twenty per cent. per annum on said amount: Provided, that if upon a final settlement it should appear that said collector was entitled to credits at the time he is required by law to settle, the comptroller-general may allow the same, and charge such interest only on the amount for which the collector is in default, together with all the costs and attorney's fees incurred by reason of the issuance of said execu-

tion." This section relates to county *tax-collectors,* but its provisions are made applicable to *county treasurers* by section 585, which declares: "When the county treasurer at any time fails to pay any order which is entitled to payment, or other legal demand upon him, or to pay any balance that may be in his hands to his successor, or to the person entitled to receive it, the ordinary may issue execution against him and his sureties for the amount due, as against a defaulting tax-collector." The plaintiff in this case is the surety on the official bond of the treasurer. By that bond the treasurer and his surety both contract with reference to the law, and agree that the principal "shall faithfully discharge all the duties of such office of county treasurer of said county, during the time he continues therein or discharges any of the duties thereof." The above statutes draw no distinction between the principal and surety in regard to payment of interest, but the interest specified in the statute is to be charged against both principal and surety. *Lamb* v. *Darl,* supra; *McFarlin* v. *Board of Drainage Commissioners,* 153 *Ga.* 766 (113 S. E. 447); *Wilcox County* v. *American Surety Co.,* 164 *Ga.* 798 (139 S. E. 538). They stand upon the same footing as to interest and rate of interest, and, viewed from the angle that the surety's contract guarantees the obligations of the principal, they also stand on the same footing as to the time from which interest should be calculated. The provision for 20 per cent. interest is highly penal. Do these statutes authorize calculation of interest from the date of defalcation, as against either principal or surety? They do not say so in terms, and, being penal, can not be so extended by construction. The case differs from the right to interest provided by law or by contract upon an ordinary debt; but even in regard to interest of that character, where no time was fixed by contract from which interest should be calculated, it has been held by this court, in a case of damages for breach of a bond, that interest should be calculated from the date of demand. It was said: "The condition of this bond was, that the agent should account for all the money which might come into his possession or control by reason of his employment, and make good all loss or damage which might happen to such money while under his control for which he might be legally responsible, and indemnify and save harmless the express company from all liability on account of his fault or neglect.

Therefore when money had been received by him and lost on account of his negligence, and a demand was made upon him and his sureties to pay it in accordance with the bond, and they refused to do so, it became a debt due by him and his sureties to the plaintiff. When the demand was not complied with, and the agent and his sureties delayed the plaintiff by litigation from collecting its money, it was entitled to damages for such delay, and the law gives such damages both as against the agent and his sureties by way of interest from the date of the demand." *Frink* v. *Southern Express Co.*, 82 *Ga.* 33 (5) (8 S. E. 862, 3 L. R. A. 482). The principle thus ruled is controlling in the instant case. On that principle, the interest in the present case should be calculated, not from the dates of actual defalcation, but from the date of demand or the equivalent of a demand, such as issuance of execution or the like. No such point was made or decided in *Lamb* v. *Dart,* supra, where, as the record of file in this office shows, the interest was calculated from the date of execution; *Roberts* v. *Dancer,* 144 *Ga.* 341 (87 S. E. 287), where the execution was for principal only; *McFarlin* v. *Board of Drainage Commissioners,* supra, where the interest was calculated from the date of demand; *McWhorter* v. *Chattooga County,* 154 *Ga.* 289 (114 S. E. 203), where interest was calculated from the date of execution; *Wilcox County* v. *American Surety Co.,* supra, where interest was calculated from the date of execution; *American Surety Co.* v. *Kea,* 168 *Ga.* 228 (147 S. E. 386), where interest was allowed after demand. None of these cases departed from the principle quoted above from *Frink* v. *Southern Express Co.* The ruling now made disposes of the controlling question in the case, and requires a reversal of the judgment refusing an injunction.

*Judgment reversed. All the Justices concur.*