## SCHOOL DISTRICT NO. 22, HARLAN COUNTY, APPELLANT, v. HARLAN COUNTY, APPELLEE.

FILED MAY 10, 1934. No. 28939.

*F. L. Pierce* and *Butler & James,* for appellant.

*Shelburn & Russell, contra.*

Heard before Goss, C. J., Good, Eberly, Day and Paine, JJ., and Tewell, District Judge.

Goss, C. J.

Plaintiff appealed from a judgment denying it a recovery for interest on a sinking fund established for the retirement of bonds issued by it. There were two causes of action. The first cause was for $2,240, for alleged unnecessary interest at the rate of 5 per cent. per annum, paid out of the sinking fund instead of paying off the bonds at an earlier date than they were paid; the second cause is for $1,212.45, total interest collected by the county from depository banks in which the daily balance of the sinking fund earned 2 per cent. per annum. Jury trial was waived and the cause was tried to the court upon a written stipulation of facts, which comprises the entire bill of exceptions. The final judgment dismissed both causes of action.

March 1, 1918, plaintiff issued 20 negotiable bonds of $700 each, totaling $14,000, bearing 5 per cent. interest, payable semiannually, one bond maturing each year and the rest maturing March 1, 1938, but with the option to pay all or any part of the bonds at any interest paying date. Also, on August 1, 1919, plaintiff issued 19 negotiable bonds of $500 each, totaling $9,500, bearing 6 per cent. interest, payable semiannually, maturing August 1, 1939, but without option of paying before maturity. These two issues constitute the only bonds of plaintiff outstanding during any period named in this suit. The nonoptional bonds were sold to private investors. None of them were ever held by or for the county.

March 1, 1918, the county treasurer purchased the entire issue of optional bonds, not for the account of any particular fund of the county nor of any governmental subdivision thereof. They were paid for out of cash in his hands as county treasurer and were thereafter at all times carried on his books as part of the cash on hand until those then remaining unpaid were retired in Sep-

tember and October, 1931, upon request of officers of the school district. Prior to that the county treasurer had retired one of the $700 bonds each year commencing in 1920 and continuing up to 1931, inclusive. All payments to the county on these optional bonds were charged by the county treasurer to the "sinking fund." During the period from March 1, 1918, to September and October, 1931, the treasurer also charged to the account of plaintiff, as paid to the county, interest at the rate of 5 per cent. per annum on the optional bonds in his hands. All payments of interest and principal on these bonds are shown by an exhibit made a part of the stipulation of facts.

Commencing in 1918 and continuing until 1931, inclusive, the county board each year levied a tax upon property in the school district for the purpose of raising funds to pay interest on the outstanding bonds and to establish a sinking fund to retire the bonds.

The stipulation also has attached to it an exhibit which is a tabulation showing the balance as of September 1 each year in the sinking fund of plaintiff; a statement of the amount required as a sinking fund for the payment of the $9,500 nonoptional bonds; the total amount of optional bonds which the treasurer could have paid with available funds after making provision for interest payments and for sinking fund for nonoptional bonds; and a tabulation of the interest collected by the county and credited to its general fund, which the county would not have received had the county treasurer used available funds in the sinking funds of plaintiff to discharge optional bonds held by him as a part of his cash on hand.

It is stipulated that not until 1931 did the county or its treasurer at any time notify plaintiff, nor did its officers discover, that a surplus was being accumulated for retirement of bonds. Then a newly elected county superintendent notified them of the fact and they then directed the treasurer to pay the optional bonds, which was done, and at the same time a large amount of the

nonoptional bonds was paid by arrangement between plaintiff and the holders, leaving only $2,000 of the nonoptional bonds outstanding; that not at any time from 1918 to 1931 did the officers of plaintiff give any directions to the county treasurer as to how any of its sinking fund should be invested or direct him to discharge any of the optional bonds; that from January 1, 1921, to January 1, 1930, the county treasurer deposited all moneys in his hands as county treasurer in duly designated depository banks and received interest thereon at the rate of 2 per cent. on the average daily balance and this was all credited to the general fund of the county; attached to the stipulation as an exhibit is a tabulation showing that the interest thus calculated on the sinking fund of plaintiff amounts to a total of $1,212.45. This is the amount asked by plaintiff in its second cause of action.

Bearing in mind that until 1931 plaintiff and its officers gave no directions to the county treasurer as to its bond funds, let us examine the statutes to discover what, if any, directions they give on the subject. The chapter on "School District Bonds," section 11-911, Comp. St. 1929, which had been unchanged since 1913, provided for an annual tax levy upon taxable property in each school district to furnish sufficient money to pay interest upon bonds and to provide a sinking fund for their final redemption. Funds collected therefrom are to "be and remain in the hands of the county treasurer a specific fund for the payment of the interest upon such bonds, and for the final payment of the same at maturity." Section 11-913, Comp. St. 1929, provides that any money remaining in the hands of the treasurer, after paying interest due on any valid school district bonds and the retention of enough to pay accruing interest for the current year, "shall be retained as a sinking fund for the final redemption of such bonds and shall be by the treasurer, *when so ordered by the school board* (italics ours), invested as follows, to wit:" The stipulation of facts shows no such order was ever given.

In the chapter on "Revenue" and article on "Deposit and Investment of Public Funds," section 77-2517, Comp. St. 1929, says that a county treasurer, where "there is a sinking fund on hand in the treasury for the redemption of outstanding county, township or school district bonds, when such sinking fund is not otherwise invested, shall have power and is hereby authorized and directed to invest such funds in legally issued and duly registered warrants and legally issued and duly registered county bonds of the county at face value of such warrants or county bonds." The evidence does not show that any warrants or bonds of the character specified in this statute were available for investment.

Section 77-2521, Comp. St. 1929, authorizes the school board "to direct the legal custodian of any of its sinking funds to invest such sinking funds in the warrants of such school district." This likewise is not available because plaintiff, upon whom rested the burden of proof, has stipulated that it gave no directions to the treasurer as to its funds and, moreover, the evidence does not show that the school district had any warrants in which the county treasurer might invest.

The plain meaning of these statutes we have referred to does away with the necessity of citing or considering any cases. The school district neglected and failed to manifest diligence in its business. Had it done so, it would have known the levies were producing more money than needed to discharge the bonds as they became due; and it would, under its statutory authority, have exercised its duty to direct the county treasurer from time to time to use the sinking fund to discharge the bonds and stop the interest thereon. No legal duty rested upon the treasurer to call the bonds and pay them without direction from plaintiff. We are of opinion the trial court's judgment on the first cause of action was correct.

Section 77-2506, Comp. St. 1929, is the section providing for not less than 2 per cent. on deposits in approved banks by a county treasurer of "moneys in his hands

collected and held by him as such county treasurer." The county treasurer held these school district moneys as county treasurer. Under section 77-2521, Comp. St. 1929, he was the "legal custodian" of the sinking funds of the school district. He was not the treasurer of the school district. The district had its own treasurer. Comp. St. 1929, sec. 79-301. Under section 77-2507, Comp. St. 1929, all interest paid by banks on "public funds" must "be credited by the county treasurer directly to the account of the general fund of the county." The school district sinking fund was a part of the public funds in the hands of the treasurer. They had not been used to retire bonds under the direction of the school district, nor had it become the duty of the county treasurer to invest them under direction of any statute, as we have shown in the former division of this opinion. We have discovered no statute, and none has been pointed out to us, that permits this interest to be taken out of the general fund for the use and benefit of the school district. The legal inference is that it was the intent of the legislature that it should belong to the county as a part of its general fund.

On this point the school district cites *Nemaha Valley Drainage District v. Nemaha County*, 100 Neb. 64, where it was held that "Interest received from depository banks by a county treasurer, upon funds in his custody as *ex officio* treasurer of a drainage district, is the money of such district and should be credited by the treasurer to its account and not to the general fund of the county." See section 1855, Rev. St. 1913 (which has come down to us with little change as section 31-459, Comp. St. 1929), making the county treasurer *ex officio* treasurer of such a drainage district, which had no treasurer of its own. So the holding was to the effect that the money from which interest was there derived was not public money or funds in the sense that the money constituted public funds as heretofore quoted in section 77-2507. For the court said in the opinion: "The money of such a drainage district as this, as soon as collected, passes

automatically from the county treasurer, in his capacity as collector, into his custody as *ex officio* treasurer of the district. It is the general rule, where there is no statute to the contrary, that interest becomes a part of the fund by whose investment it was produced, and hence the interest belongs to the drainage district." We think the case is thus distinguished from the case at bar. We are of the opinion the legislature has prevented us from holding, as plaintiff asks us to do, on principles of equity and justice, that the plaintiff may recover this interest, but that the matter is controlled by statute. If changed, the rule must be changed by the legislature. Therefore the judgment of the district court is

AFFIRMED.