LAMB, administrator, <em>v.</em> DART, ordinary, for use, etc.

1. The commissioners of roads and revenues of Glynn County are authorized by law to issue execution against the estate of a deceased defaulting treasurer of said county.
2. When such fi. fa. has been issued by the clerk of the board of commissioners in the name of said board, and under an order and judgment duly rendered by it directing him to issue the same, it is not void because the members of the board failed to sign it, nor because it does not recite that a demand was made on the defendant for the amount claimed, before the execution issued.
3. When such execution recites in its body that the amount for which the same issued was for money received by the treasurer for and on account of the County of Glynn and not paid over to his successor in office, the fact that it also recites the liability for the amount named is to "Horace Dart, ordinary of Glynn County, Georgia, for the use of the commissioners of roads and revenues of said county," and directs the executing officer to render the amount to "Horace Dart, ordinary of said county, for the use of said commissioners of roads and revenues of said county," does not render the fi. fa. void; and there was no error in the court's allowing an amendment thereto substituting the words "Glynn County" for those just above quoted; especially is this true when the defendant's affidavit of illegality contained no such ground of objection to the fi. fa.
4. The fi. fa. as thus amended conformed to the judgment and order of the board of commissioners, and was sufficiently full and explicit.
5. The rate of interest chargeable against a defaulting county treasurer is twenty per cent. per annum after default, and the fi. fa. properly provided for the recovery of this interest.
6. When a county treasurer makes a general deposit of the county's funds in a bank, which are lost on account of the subsequent failure of the bank, he is liable therefor on his bond as treasurer, although he believed the bank solvent at the time of the deposit, and up to the time of its failure, and it was so regarded and reputed by the public.
7. The law and the evidence demanding the finding of the auditor as set forth in his report, there was no error in the court's overruling the exceptions thereto and directing the verdict accordingly.

Submitted June 17, — Decided August 1, 1899.

Illegality.   Before Judge Sweat.   Glynn superior court. May term, 1898.

*Courtland Symmes*, for plaintiff in error
*Atkinson & Dunwody*, contra.

LEWIS, J.   On the 27th day of August, 1897, the county commissioners of Glynn County issued the following notice:

"State of Georgia, County of Glynn.   Office of the Board of Commissioners of Roads & Revenues of Glynn County, Georgia.

To Thomas W. Lamb, administrator upon the estate of John P. Lamb, deceased:   You are hereby notified to be and appear before the Board of County Commissioners of Glynn County on the first Tuesday in September, A. D. 1897, to render a full and final settlement of your decedent, John P. Lamb, late treasurer of Glynn County, with said county.   The principal amount of said indebtedness, as shown by the books of the late treasurer, is the sum of $7,645.38, with interest from the 19th day of January, 1895.   Herein fail not, as in default thereof the commissioners will proceed as to justice shall appertain.

Witness the Honorable the County Commissioners of Glynn County, this 27th day of August, 1897.

James S. Wright, Chairman.   H. H. Harvey.   E. F. Coney.

County Commissioners of Roads and Revenues of Glynn County, Georgia."

This notice was duly served by the deputy-sheriff of Glynn County on Thomas W. Lamb as administrator of John P. Lamb, and like notices were served on each of the sureties on the treasurer's bond.   The following resolution was passed by said board of county commissioners:

"Whereas Thomas W. Lamb, administrator upon the estate of John P. Lamb deceased, late treasurer of Glynn County, Georgia, and A. T. Putnam, Wm. Anderson, D. Jas. Dillon, and J. M. Madden, as sureties upon the bond of such treasurer, were notified to be and appear before the County Commissioners of Glynn County, Georgia, on Tuesday the 17th instant, to make settlement of the balance due by said treasurer, to wit, the sum of seven thousand, six hundred and forty-

five dollars and thirty-eight cents ($7,645.38), with interest thereon from January 15th, 1895, as provided by law, as for county funds raised under the provisions of the law for county purposes, and which sum has not been paid over to the successor in office of the said John P. Lamb; and whereas the said Thomas W. Lamb, administrator on the estate of John P. Lamb deceased, and the said securities, to wit, A. T. Putnam, Wm. Anderson, D. Jas. Dillon, and J. M. Madden, have failed and refused to make settlement of said amount, with interest, or pay the same over to the now county treasurer of said county, and render no sufficient excuse in law for such failure: Be it therefore resolved that it is ordered, considered, and adjudged by the commissioners, that execution do issue against the estate of John P. Lamb deceased, and A. T. Putnam, Wm. Anderson, D. Jas. Dillon, and J. M. Madden, sureties upon the bond of the said John P. Lamb, late treasurer of said county, for the sum of seven thousand, six hundred and forty-five dollars and thirty-eight cents ($7,645.38), with interest at such rate as is provided by law, from January 15th, 1895. Be it further resolved that it is ordered, considered, and adjudged that the clerk of the county commissioners of Glynn County, Georgia, be and he is hereby directed, in the name of the county commissioners, to forthwith issue said execution in the manner and form as is prescribed by law. Adopted."

Upon the foregoing resolution issued the following fi. fa.:

"Georgia, Glynn County. To all and singular the sheriffs of said State, and their lawful deputies, greeting:

"You are hereby commanded, of the goods and chattels, lands and tenements of the estate of John P. Lamb, late deceased, of said county, and now being administered by Thomas W. Lamb, administrator upon said estate, whereof the said John P. Lamb appears as principal upon a bond as county treasurer of Glynn county, executed on January 28th, 1893, and of the goods and chattels, lands and tenements of A. T. Putnam, Wm. Anderson, D. Jas. Dillon, and J. M. Madden, as sureties upon said bond, you cause to be made the sum of seven thousand, six hundred and forty-five dollars and thirty-eight cents ($7,645.38), besides interest thereon from January

15th, 1895, at the rate of twenty per centum per annum, which sum and interest thereon the said Thomas W. Lamb, as administrator upon the estate of John P. Lamb deceased, and the said A. T. Putnam, Wm. Anderson, D. Jas. Dillon, and J. M. Madden, as sureties upon said bond, became convicted and liable unto Horace Dart, Ordinary of Glynn County, Georgia, for the use of the Commissioners of Roads and Revenues of said county, upon a failure made by the said Thomas W. Lamb, administrator upon the estate of John P. Lamb deceased, late treasurer of said county and A. T. Putnam, Wm. Anderson, D. Jas. Dillon, and J. M. Madden, as sureties, as aforesaid, to make settlement thereof, and pay over to the successor in office of the said John P. Lamb said principal sum of seven thousand, six hundred and forty-five dollars and thirty-eight cents ($7,645.38), which is the balance found to be due by John P. Lamb, late treasurer of said county, for money received by him as such treasurer for and on account of the said County of Glynn, and not paid over to his successor in office, and that you have said sums of money, principal, interest, and all costs, before the Board of Commissioners of Roads and Revenues of said county at their next regular meeting to convene on the first Tuesday in October, A. D. 1897, to render to said Horace Dart, Ordinary of said county, for the use of said Commissioners of Roads and Revenues of said county, and have you then and there this writ. Witness the Honorable James S. Wright, H. H. Harvey, and E. F. Coney, County Commissioners of Roads and Revenues of Glynn County, Georgia, this 15th day of September, A. D. 1897.　　　　　J. C. Lehman.

"Clerk of the Commissioners of Roads & Revenues of Glynn County, Georgia."

The above execution was levied, on September 27, 1898, by the sheriff of Glynn County, upon various tracts of land as the property of the estate of John P. Lamb deceased, in the hands of Thomas W. Lamb, administrator. To that execution the administrator of the estate of John P. Lamb filed an affidavit of illegality, containing, as the only ground of defense to the fi. fa., an allegation that the defendant was not indebted to and did not owe the County of Glynn, nor any one whomso-

ever, the sum claimed in the execution, or any part thereof, for a balance due by John P. Lamb, late treasurer of the County of Glynn, for moneys received by him as such treasurer for and on account of said County of Glynn. The case thus presented was, by the judge of the superior court of Glynn county, referred to an auditor, who made his report upon the law and facts involved. Exceptions were filed by the administrator of the deceased treasurer, both of law and fact, which were overruled by the judge, who directed the jury to return a verdict overruling the same and finding in favor of the auditor's report. The auditor reported a liability to the county of the defendant for the amount named in the execution issued by the county commissioners. There are divers exceptions and assignments of error set forth in this record. A large number of them are repeated two or three times or more in the record. For instance, before the auditor objection was made by defendant's counsel to the introduction of the fi. fa. on fourteen grounds, which were overruled by the auditor. A motion was made to quash the fi. fa., by defendant, on identically the same grounds, all of which are again set forth in the record. This motion was overruled by the auditor. A motion was made to dismiss the case on the same grounds, set forth the third time in the record, which the auditor likewise overruled. We will not undertake in this report to set forth in detail all the various exceptions assigned, as it would not be necessary to a clear understanding of the vital issues involved, but, in the opinion rendered below, we cull from this voluminous record the few points that seem to have any merit whatever in them, which appear to be the only ones relied upon by counsel for plaintiff in error in his brief.

1. It is contended by counsel for plaintiff in error, that the ordinary of Glynn County, and not the county commissioners thereof, is clothed by law with authority to issue an execution against a defaulting county treasurer, and that therefore the fi. fa. in this case is void, and should have been quashed, and the case dismissed against the defendant. By virtue of the act of 1870, page 442, § 7 (5), the board of commissioners of roads and revenues in the County of Glynn was given exclusive juris-

diction when serving for county purposes, among other things, "in examining and auditing the accounts of all officers having the care, management, keeping, collecting, and disbursement of money belonging to the county, or appropriated for its use and benefit, and in bringing them to a settlement." Under the law as it originally existed, the power of issuing execution against a defaulting county treasurer was vested in the inferior court. After the abolition of that court this power became vested in the ordinary of each county, except in counties where commissioners of roads and revenues were created by special act. The provision in the act of 1870, above quoted, clearly transfers this power in the case of Glynn County to its board of commissioners of roads and revenues. This identical question has been decided by this court in the case of the *County of Pulaski* v. *Thompson*, 83 *Ga.* 270, where it was ruled that under the act of 1886, creating the board of commissioners of Pulaski County, that body has power to bring the tax-collector to a speedy settlement by issuing an execution against him, the commissioners having exclusive jurisdiction of the matter. On page 272, in the opinion of Justice Simmons, this power is founded upon a provision in the act of 1886, almost identical with that in the act of 1870 for Glynn County. The provision in the act of 1886 for Pulaski County confers this power on its board of county commissioners in the following words: "in examining and auditing the accounts of all officers having the care, management, collecting, or disbursing of the money of the county, and in bringing said officers to a speedy settlement." See also *Arthur* v. *Commissioners of Gordon County*, 67 *Ga.* 220.

2. It is further contended, that even if the board of commissioners of Glynn County had authority to issue this execution, it is void from the fact that it was signed only by the clerk of the board, whereas it should have been issued and signed by the members of the board. In the case of the *County of Pulaski* v. *Thompson*, cited above, the same question was likewise decided. It was there held, it did not matter whether the commissioners or their clerk signed the execution; and again in the case in 67 *Ga.*, cited above, is decided the identical question in the following words: "An execution issued by county com-

missioners and signed by their clerk on their order is good."
See also *Mason* v. *Commissioners of DeKalb County*, 104 *Ga.* 35,
and cases cited.

It is further insisted that the fi. fa. was fatally defective, in
that it did not recite that any demand had been made on de-
fendant for the amount claimed, before the execution issued.
This question also has been adjudicated by this court against
the contention of counsel for plaintiff in error, in the case of
*Price* v. *Douglas County*, 77 *Ga.* 163, where it was held that
"There was no error in refusing to quash a fi. fa. issued by an
ordinary against a defaulting county treasurer, because it did
not appear that notice, in writing or otherwise, had been given
before the issuing of the fi. fa."

3. Another error assigned in the motion for new trial is, that
the court erred in not quashing the fi. fa. on the ground that
it indicated upon its face that the ordinary for the use of the
board of commissioners was the plaintiff, whereas the fi. fa.
should have issued in the name of Glynn County as the real
plaintiff.    The court allowed an amendment to meet this objec-
tion, and this is assigned as error.   We think a sufficient reply to
this objection is, that the defendant in his affidavit of illegality
nowhere alleges that the fi. fa. was proceeding illegally on ac-
count of any such defect, and he did not even ask to amend
that illegality.    If there was anything in his point, it would
have constituted a good ground in an affidavit of illegality, which
should always set forth all the reasons which a defendant relies
upon to show that the execution is proceeding illegally, and
there is no law for his setting up new grounds in a motion to
dismiss the case, made after the case is called for trial upon the
issue made by the affidavit of illegality.   We think the defect
complained of clearly amendable.   The judgment or order of
the board of commissioners upon which the fi. fa. was issued
was clearly for the liability to the county.   If the fi. fa. failed
to follow that judgment by designating the proper plaintiff, then
it was amendable so as to conform to the judgment.   Especially
is this true where the fi. fa. recites on its face in substance that
the liability grew out of a default in failing to account for
money belonging to the county.   In the case of *Smith* v. *Bell*,

107 *Ga.* 800, it was held that even when the fi. fa. omitted the name of the plaintiff altogether, it could be amended by supplying that name so as to make it conform to the judgment.

4. There were other exceptions made to the fi. fa., in that it did not contain specific allegations as to when the liability of the treasurer occurred, and did not allege the amount for which it was issued, when due, why due, or how due, nor how found to be due, nor when it became due. A sufficient answer to these objections is found in the recitals in the fi. fa. itself. Counsel for plaintiff in error seems to have an idea that such executions should contain upon their face all the allegations that would be necessary to maintain a petition in equity brought to establish the liability of the defendant in such a matter. This fi. fa., as amended, is full and explicit in setting forth all the facts that it is necessary to embody in such an execution. It follows the order and judgment upon which it issued, and the court was clearly right in overruling all the objections thereto.

5. The auditor found that the rate of interest chargeable against the estate of the defaulting treasurer should be twenty per cent. after default, and it is contended that there is no authority of law for such a penalty against a treasurer. The Civil Code, § 469, provides that "When a county treasurer at any time fails to pay any balance in his hands to his successor, the ordinary may issue execution against him and his sureties for the amount due, as against a defaulting tax-collector." Section 924 provides that "If any collector shall fail to settle his accounts with the comptroller-general in terms of the law, he shall issue execution against him and his sureties for the principal amount, with interest at the rate of twenty per cent. per annum on said amount." Construing the two sections together, we think it was the evident purpose of the legislature that an execution issued against a county treasurer should proceed in the same manner as such execution against a tax-collector, both as to the principal and interest, and that the court did not err in overruling the exceptions to the auditor's report finding defendant liable for interest at twenty per cent.

6. The main reason upon which counsel for plaintiff in error seems to rely for a reversal of the judgment of the court

below is, that under the facts found by the auditor there was no liability whatever of the treasurer to the county; the auditor having found, upon the undisputed testimony before him, that the loss of the county was occasioned by a deposit made of the county funds in the Oglethorpe National Bank of Brunswick, Georgia, and also in the Brunswick State Bank of Brunswick, Georgia, and that at the time of such deposits these banks were recognized by the public as being entirely solvent, and the treasurer so believed up to the time of their failure. This contention is founded upon the idea that the liability of a county treasurer is like that of an ordinary bailee, who, in the management of property intrusted to him, is not responsible for any loss thereof after the exercise of ordinary care and diligence. But we regard the liability of an official charged with the custody of public funds as something greater than that of a mere bailee. In determining the responsibility of such an officer it can serve no purpose to pay any regard to the law of bailment, for his responsibility must in law be determined by the contract he made. That contract is expressed in the terms of his bond.. The bond of the treasurer and his sureties, which was introduced in evidence in this case, binds them in the sum of twenty thousand dollars. The condition of the bond is, that John P. Lamb shall faithfully discharge all the duties of the office of county treasurer; in that event the obligation to be void, otherwise to remain in full force. Among his obligations as county treasurer it is his duty to pay over to his successor in office the balance of all the county funds he has received, after deducting legal disbursements he has made thereof. If he fails to do this, his bond is forfeited. Neither the bond nor the law contains any provision relieving the treasurer from liability for such balance should the same become lost without fault or negligence upon his part. With the safe custody of the public money that went into his hands he, and he alone, was intrusted. There is no authority whatever for his making any other person or corporation the custodian of the fund. It appears from the report of the auditor that this was a general deposit of county funds made by the treasurer in these banks. The bank was even under no obligation to keep that fund sepa-

rate and to itself as specific property belonging to the county, or to its treasurer.  It could appropriate it to the payment of checks drawn upon the bank, and could otherwise use it in the course of its legitimate business.  Such general deposits in bank really create the relation of debtor and creditor between the bank and the depositor.  It therefore simply amounts to a loan to the bank.  With the same reason might it be contended by a public official that he is relieved from liability for public funds in his hands because he loaned it to an individual in the utmost good faith, and with the honest belief that the borrower was perfectly solvent.  Public policy will not tolerate such a defense by a public official.  It is true the rule of law which is announced in this case may in some instances operate harshly, but a county treasurer when he accepts his office takes it with all of its responsibilities and its perils.  Among these responsibilities is the safe-keeping and the proper disposition of the county funds that go into his hands; and among the perils he assumes is the liability of its loss, whether he keeps it himself, or deposits it in bank; and when it is lost, especially when the loss results from the failure of another with whom he has deposited the fund without authority of law, there has been a breach of his bond, and he is liable to the county for the loss.

These views are sustained by an overwhelming weight of judicial decisions rendered by various courts of last resort in this country.  Indeed the trend of adjudications upon the subject leads to the conclusion that a loss by an official of public money intrusted to his care can not be excused unless it be the result of the act of God or the public enemy.  Repeatedly has it been ruled that the taking of such funds by a thief, or its seizure by a robber, or its consumption by fire, much less the failure of a bank, unaccompanied at that with any negligence on the part of the official, will not constitute a valid defense for a failure to account for the money.  In the case of the United States v. Prescott, 3 Howard, 577, it was decided that "the felonious taking and carrying away the public moneys in the custody of a receiver of public moneys, without any fault or negligence on his part, does not discharge him and his sure-

ties, and can not be set up as a defense to an action on his official bond." Justice McLean, in delivering the opinion in that case, on page 587 says that "The case is not one of bailment, and consequently the law of bailment does not apply to it. The liability of the defendant, Prescott, arises out of his official bond and principles which are founded upon public policy." Again, on page 588, he says, "The obligation to keep safely the public money is absolute, without any condition, express or implied, and nothing but the payment of it, when required, can discharge the bond." The principle and reasoning in these decisions, as far as we have been able to ascertain, have been uniformly followed by the Supreme Court of the United States in subsequent decisions involving the same question. For instance, in the case of the United States *v.* Morgan, 11 Howard, 154, it was decided that a collector of public revenues was responsible for treasury notes stolen from him without his fault. United States *v.* Keehler, 9 Wallace, 84, and Boyden *v.* United States, 13 Wallace, 17, are on the same line, both decisions affirming the proposition that a receiver of public money is not a bailee, and that his bond places him under a higher responsibility. The case of the United States *v.* Thomas, 15 Wallace, 337, is not in conflict with the decisions cited. It appeared in that case that from a collector of public money under the United States government a forcible seizure was made of the public funds by Confederate authorities, against the will of the revenue officer and without his fault or negligence. It was held that this discharged him from liability, for the reason that he was prevented from rendering the fund by the act of the public enemy. It was further ruled in this decision that a collector, as the bailee of the government, was bound by the common law only to due diligence, and was liable only for negligence or dishonesty; but it is also held, in the same connection, that by the policy of the acts of Congress on the subject a more stringent accountability is exacted. It will be seen from the opinion in that case that some of the opinions above cited are referred to approvingly. They were distinguished, however, from the Thomas case on the ground that in none of them was the defense of overruling necessity interposed.

In the case of District Township of Union v. Smith, 39 Iowa, 9, s. c. 18 Am. Rep. 39, it appeared that a school fund while in the custody of the treasurer of a school district was consumed by fire without his fault. This officer was under a bond simply conditioned upon "the fulfillment of his duty according to law and the best of his ability." It was held he was not discharged from liability on the bond for the money thus lost. See also State v. Nevin, 19 Nevada, 162, and State v. Harper, 6 Ohio State, 607. In the case of Lowry v. Polk County, 51 Iowa, 50, s. c. 33 Am. Rep. 114, it was decided that "a county treasurer is liable for the public money lost by the failure of a bank in which he deposited it, although the county provided no safe place for such deposit." In the opinion by Seevers, J., in that case, on page 115, he stated in effect that it was unnecessary to refer to the evidence as to the character and standing of the bankers with whom the money was deposited, or to determine whether reasonable care was exercised by the plaintiff when the deposit was made with them; and further that it was immaterial whether the money was deposited in the name of plaintiff or in his name as county treasurer, it being deposited as deposits are usually made, from time to time, and checked out as the necessities of the treasury required; that the relation of debtor and creditor therefore existed between plaintiff and bank from the time the deposit was made; that this in effect constituted a loan from the plaintiff to the bank, or a using of the money for private purposes, and was therefore an unlawful disposal of public money, and that constituted a breach of the bond. On the same line, holding an official charged with public funds liable for loss of the same occasioned by subsequent failure of the bank although the officer was not guilty of negligence in making the deposit, are the following cases: Ward v. School District, 10 Nebraska, 293, s. c. 35 Am. Rep. 477; Tillinghast v. Merrill, 151 N. Y. 135, s. c. 56 Am. State Rep. 612; Bush v. Johnson County, 48 Nebraska, 1, s. c. 58 Am. State Rep. 673; Rose v. Douglas Township, 52 Kansas, 451, s. c. 39 Am. State Rep. 354.

While we do not recall any case decided by this court involving the liability of such an officer for thus depositing the

public funds in a bank recognized at the time as perfectly solvent, yet we think, on the principle ruled in the case of *Phillips* v. *Lamar*, 27 *Ga.* 228, the estate of the treasurer in this case is necessarily liable for the loss consequent upon the failure of the bank where he deposited the county money. It was there decided that "If a sheriff collect money, and of his own accord deposits the money in a bank which fails, he is liable to respond to the plaintiff." The reasoning of the opinion of Judge McDonald in that case is equally applicable to the case at bar; and indeed we can conceive of no reason why a sheriff, who holds money collected by him held up by the interposition of a money rule, should be held to any stricter liability than a county treasurer, or any other officer having the legal custody of a public fund. See also *Gilmore* v. *Moore*, 30 *Ga.* 628, where a sheriff was held liable for money he had collected, though stolen out of his trunk under his bed while he slept.

7. In the evidence before the auditor there was no dispute as to the amount of money deposited by the treasurer in the banks mentioned, or the amount thereof that was lost in consequence of the failure of the banks. Under the principles of law hereinabove indicated, the evidence demanded the finding in his report as to the liability of the defendant, and the court did not err in directing the verdict accordingly.

*Judgment affirmed. All the Justices concurring.*