NEMAHA VALLEY DRAINAGE DISTRICT, APPELLEE, V. NEMAHA COUNTY, APPELLANT.

FILED JUNE 3, 1916. No. 19554.

1. **Drainage Districts:** DEPOSITS: INTEREST. Interest received from depository banks, by a county treasurer, upon funds in his custody as *ex officio* treasurer of a drainage district, is the money of such district and should be credited by the treasurer to its account and not to the general fund of the county.

2. ———: FEES. Under the provision of section 1858, Rev. St. 1913, requiring a drainage district to pay the fees of all court and county officers who may by virtue of the act render service to said district, the county in which the drainage district, or the chief portion thereof, is situated, is entitled to retain, as a part of its general fund, the fees fixed by statute, for all taxes and special assessments collected by the county treasurer of such county in his official capacity as such treasurer and by him paid into such general fund.

APPEAL from the district court for Nemaha county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Neal & Armstrong,* for appellant.

*Kelligar & Ferneau, contra.*

FAWCETT, J.

Plaintiff, which will be called the drainage district, is a public corporation organized under the provisions of sections 1797–1865, Rev. St. 1913. Defendant, which will be called the county, is also a public corporation and one of the political subdivisions of the state. The petition sets out two causes of action. The issues tendered thereby present questions of law only, the facts having been stipulated. The first presents the question of the liability of the county to account for interest collected by the county treasurer, and credited to the general fund of the county, on the funds of the district, deposited by the county treasurer, together with other funds in his hands, in the several depository banks of the county, under the provisions of the statute requiring the deposit of all funds collected by him. The second presents the question of the liability of the county for collection fees charged by the county treasurer, and credited to the general fund of the county, on the taxes levied by the district and certified to the county clerk of defendant county and extended by him on the tax rolls of the county, and thereafter certified by him and delivered to the county treasurer of defendant county for collection. Plaintiff recovered on the first cause of action, and defendant recovered on the second. Each party appeals.

We will first consider defendant's appeal from the judgment on the first cause of action. Section 6660, Rev. St. 1913, provides that the county treasurer shall deposit "the amount of moneys in his hands collected and held by him as such county treasurer." In the next section, providing for the manner in which the money shall be kept, it is termed "public funds on deposit," "public moneys," and "public moneys of the county," and it was provided that "all interest on such moneys be credited by the

100 Neb.—5

county treasurer directly to the account of the general fund of the county." In the next section the fund is spoken of as "moneys of the county." Section 6663, Rev. St. 1913, prohibits the making of profit, directly or indirectly, out of any money in the county treasury belonging to the county, the custody of which the treasurer is charged with, and it is made his duty "to use all reasonable and proper means to secure to the county the best terms for the depositing of the money *belonging to the county* consistent with the safe-keeping and prompt payment of the funds of the county when demanded." (Italics are ours.) By succeeding sections the power is given to county boards, city councils, school boards and township boards to direct the county treasurer to invest the sinking funds of such corporations in his hands in the warrants issued by each respectively.

In ordinary cases when money is collected by a county treasurer for the benefit of a separate public corporation, the county holds the money as trustee until drawn out by the treasurer of the district, village or city. At the time the depository law was passed, no drainage district corporations, of which the county treasurer was *ex officio* treasurer, were provided for by statute. If he collected funds for a drainage district then existing, it was his duty to pay it to the treasurer of the district on demand. As in the case of the funds belonging to a school district, or other public corporation, the treasurer of the district might preserve the interest for the benefit of his district by drawing the money from the county treasury and taking it within his own control. But, when a later statute made the county treasurer *ex officio* treasurer of drainage districts of the class then made possible, it became beyond the power of the district to protect itself by withdrawing the money from the county treasury and placing it within the district treasury. If we take the view that this is a county fund, the district will lose the interest, and the county will reap where it has not sown. We will not presume that it was the intention of the legislature to

discriminate against the owners of land within the drain-
age district, by the special assessment of whose property
the fund was created, by taking from them for the benefit of
other taxpayers the accumulations of this fund. The money
of such a drainage district as this, as soon as collected,
passes automatically from the county treasurer, in his
capacity as collector, into his custody as *ex officio* treasurer
of the district. It is the general rule, where there is no
statute to the contrary, that interest becomes a part of
the fund by whose investment it was produced, and hence
the interest belongs to the drainage district. It may be
said that, while the statute does not require the treasurer
of the drainage district to give a bond, it would seem that
the bond required from the county treasurer should be
sufficiently large to guarantee the safety of all moneys in
his hands, whether he holds it merely and purely as
county treasurer, or whether, by virtue of his office, he
holds the same for the drainage district. This, evidently,
was the idea of the county board, when it required an
increased bond to cover the further liability. The county
received its compensation for this by the collection fees
provided for by statute, as later appears in this opinion.
The district court properly found that the drainage dis-
trict was entitled to the interest obtained by the county
from the fund in the hands of the treasurer as *ex officio*
treasurer of the district.

We come now to a consideration of the second cause of
action. The levies made by the district, which were certi-
fied to the county clerk and by him to the county treasurer
for collection, were made on two different dates, the first
being for $213,124.41, and the second for $30,718.46.
When he collected these taxes and assessments the county
treasurer from time to time charged the regular collection
fees, amounting in the aggregate to $5,363.59, all of
which he credited to the general fund of the county. The
agreed statement of facts shows that the county treasurer
never qualified as an officer of the drainage district by
taking the oath of office and by giving bond to plaintiff

for the safe-keeping of its funds; that by reason of his control of the plaintiff's funds his bond was increased $100,000 and the expense of the premium on such bond was paid by the county; that the compensation of the county treasurer of defendant county had been fixed at $2,000 and certain deputy and clerk hire; that the fees and charges for the collection of the regular taxes levied by the county, state and other subdivisions, authorized to levy taxes, paid all the fees of the office and deputy and clerk hire, and left a surplus without taking into consideration the collection of the special assessments and levies made by plaintiff.

Section 1855, Rev. St. 1913, makes the treasurer of the county "in which the drainage district, or the largest portion thereof, is situated," *ex officio* treasurer of said drainage district, "for the purposes of collecting and disbursing tax or assessments, and the treasurers of the counties in which the smaller parts of the district shall be situated shall pay over to him any and all funds collected and paid over to them for the benefit of the drainage district." Section 1858 provides: "The board of supervisors (of the district), except where otherwise provided, shall, by resolution, at the time of hiring or appointing, provide for the compensation for work done and necessary expenses incurred by any officer, engineer; attorney, or other employee, and shall also pay the fees of all court and county officers who may by virtue of this act render service to the district." We think this provision of the statute clearly sustains the judgment of the district court in favor of the county on plaintiff's second cause of action. The provision seems to be clear and unambiguous that the district shall pay the fees of all court and county officers who may by virtue of the act render service to the district. That the county, through its county clerk and county treasurer, rendered a large amount of valuable service in extending the taxes and assessments of the district upon the tax rolls and in the collection of the same, to say nothing of the expense which the county incurred in wise-

Rankin v. Kountze Real Estate Co.

ly increasing the bond of the county treasurer in a large sum, and in paying the expense incident to the obtaining of such bond, must be conceded. That services of this character are worth the amount of the fees charged by the county has been determined by the legislature, which fixed the amount of such fees. It seems to us that further comment on this branch of the case is unnecessary.

For the reasons above given, the judgment of the district court is

AFFIRMED.

SEDGWICK, J., not sitting.