PUCKETT, executrix, *v.* WALKER, clerk, *et al.*

No. 14078.   JULY 15, 1942.   REHEARING DENIED JULY 28, 1942.

*James A. Branch* and *Thomas B. Branch Jr.,* for plaintiff.

*Ralph H. Pharr, E. H. Sheats,* and *W. S. Northcutt,* for defendants.

ATKINSON, Presiding Justice.   O. H. Puckett, appointed clerk of the municipal court of Atlanta in 1917, continued in office until his death in 1937.   During his administration private funds would be paid into court by private parties in garnishment and other cases, to await disposition by the court. The funds on being received by Puckett would be deposited by him in bank in one general checking account to the credit of "O. H. Puckett, Clerk." In that name he would draw against that account in favor of the individual party as directed in each case.   The deposits accumulated to the extent that funds on hand exceded current withdrawals.   In that situation Puckett, leaving on deposit sufficient funds to meet customary disbursements, withdrew the surplus funds and placed them at interest in certain savings banks under his above-quoted name.   Interest received from those sources was combined in one interest-bearing account also under the above-quoted name in the Fulton National Bank of Atlanta.   The account was designated by the number 34240.   When Puckett died this account derived solely from interest acquired as above outlined amounted to several thousand dollars.   A controversy arose between the widow of Puckett as executrix, claiming the fund as individual property of the estate of Puckett, and H. W. Chambers in his official capacity as the duly qualified successor of Puckett as clerk of the court.   All moneys demanded by parties to the various cases in court were duly paid by Puckett; but if the interest fund in question should be awarded to the executrix, there would not be funds for Chambers to meet any claims for interest that might be adjudicated in their favor.   It was stipulated however, by the parties to this case, that "It can not be determined or shown what interest, if any, was earned on any specific amount paid to O. H. Puckett."   The trial court awarded the fund to Chambers as clerk. That judgment was affirmed by the Court of Appeals, after which

certiorari was granted by this court. Pending the case in this court, Chambers resigned his office as clerk, and L. N. Walker, successor of Chambers, was made defendant in error.

1. The act creating the municipal court of Atlanta fixed the duties of the clerk as the same as those of the clerk of the superior court. Ga. L. 1913, pp. 145, 155, § 23. Among others is the duty "to receive . . all . . sums whenever required to do so by law, or order of the judge, and not otherwise." Code, § 24-2720. If the clerk receives "any money on any suit or judgment . . and . . [does] not faithfully account for it," he is "liable to rule as sheriffs are, and" he and his "sureties are likewise liable on their official bonds." § 24-2722. The sole compensation of the clerk is salary payable by the county, and he is inhibited to "receive to his own use any fees or perquisites of office." Ga. L. 1913, pp. 145, 153, 156, §§ 16, 23. Under these laws, moneys incidentally coming into the hands of the clerk from parties to cases in court are deposits for safe-keeping to meet the requirements of the orders or judgments of the court.

2. The duties of the clerk with respect to such deposits are purely ministerial. His actual possession of the money, arising from its receipt from the party paying it in, is not in his own right, nor does he acquire an individual interest. Neither does he acquire authority to substitute for the court a different depository, or to speculate by putting the money out at interest, thereby taking risk of a loss. If he does so, and collects interest under color of his office, such interest should be regarded merely as enlargement of the original deposits, and not for his individual enrichment. This accords with the principles stated in *Ricks* v. *Broyles,* 78 *Ga.* 610 (3 S. E. 772, 6 Am. St. R. 280), although the facts were not exactly the same, and the custodian being a receiver whose powers were not prescribed by statute as those of the clerk of court. See *Perdue* v. *McKenzie,* 194 *Ga.* 356 (21 S. E. 2d, 705).

(*a*) The instant case, involving authority of the clerk to put out at interest money held in custody of the court, and to apply to his individual use interest so received by him, stands on a different basis from *Phillips* v. *Lamar,* 27 *Ga.* 228 (73 Am. D. 731), *Gilmore* v. *Moore,* 30 *Ga.* 628, *Lamb* v. *Dart,* 108 *Ga.* 602 (34 S. E. 160), and similar cases in this State and in other jurisdictions, where the question was as to liability of public officers not holding

funds as custodian of court, and the powers of the officers were not under such statutes as mentioned in the preceding division. In the instant case the clerk held the fund as custodian of the court; and having no authority to lend the money, and no right to compensation beyond his salary, he had *no individual right* to interest which he collected. The case differs also from *Renfroe* v. *Colquitt,* 74 *Ga.* 618, predicated on particular statutes. Neither did the case of *Wiley* v. *Sparta,* 154 *Ga.* 1 (114 S. E. 45, 25 A. L. R. 1342), involve personal claim to interest as in the instant case.

(*b*) It is fair to say in the instant case that the judge, to whom the case was submitted without a jury, was authorized to find that the clerk did not intend to apply the fund in question to his individual use.

3. The stipulation of the executrix of the deceased clerk and the successor clerk, as to impossibility of· establishing claim for interest by any parties who deposited such funds with the clerk, would not be binding upon those making such deposits, or other possible claimants, who were not parties to the case and did not join in the stipulation; but neither the fact that such a claim is not likely to be asserted, nor its possible invalidity upon any ground if asserted, would confer upon the clerk any personal right to such interest fund, or enure in anywise to his benefit as such a claimant.

4. The foregoing sufficiently deals with the controlling questions in the case. Regardless of the reasoning on which the Court of Appeals based its decision, the judgment of that court was correct, and must be affirmed. The assignments of error in the petition for certiorari were by the executrix, and, under the foregoing principles, do not require a reversal of the judgment of the Court of Appeals.

*Judgment affirmed. All the Justices concur, except Reid, C. J., and Grice, J., who dissent.*

GRICE, Justice. The rulings in *Lamb* v. *Dart,* 108 *Ga.* 602, *Wiley* v. *Sparta,* 154 *Ga.* 1 (supra), and *American Surety Co.* v. *NeSmith,* 49 *Ga. App.* 40 (174 S. E. 262), are to the effect that a public officer is an insurer of public funds lawfully in his possession. While these decisions dealt with the liability as to public funds, there is no reason why the principle should not be applied to any funds lawfully in the custody of a public officer as custo-

dian. See the authorities cited in those decisions. Although the moneys deposited with the clerk in the instant case were those of litigants, he was none the less an insurer. Nothing to the contrary was decided in *Ricks* v. *Broyles,* 78 *Ga.* 610 (supra), nor was that case overlooked in *Wiley* v. *Sparta* (supra), as a reference to the opinion will show. When the officer is an insurer of the funds of which the law made him the custodian, that is, when he is absolutely liable for the return of the moneys so received by him, his liability is met and discharged when he accounts for the identical amount so deposited with him, without interest. 10 Am. Jur., § 21. The editor of the note in 8 Ann. Cas. 389, 391, to Rhea *v.* Brewster, 130 Iowa, 729 (107 N. W. 940), states that such is the general rule, and cites and analyzes a number of decisions to that effect. There is also a collection of authorities supporting a similar statement by the editor in 91 Am. St. R. 492, 527, to Feller *v.* Gates, 40 Or. 543 (67 Pac. 416, 56 L. R. A. 630). The distinction pointed out in People *v.* Walsen, 17 Colo. 170 (28 Pac. 1119, 15 L. R. A. 456), is the same as that found in many decisions. The court said: "In those jurisdictions where the liability of the officer is held to be absolute, no action can be maintained against him for the interest or profits made upon the money, in the absence of a statute authorizing such recovery; while on the contrary, in those jurisdictions in which the officer is held to a less strict liability a different rule prevails." The authorities proceed upon the theory that when the obligation of the official is absolute, he takes title to the fund, although a qualified title; and although the duty rests upon him to return it, he can not be charged with the incidental advantages received for the use of the money. Since the law does not tell him what to do with the money until ordered to disburse it, he is not prohibited in the meantime from making such use of it as he desires. It may be argued that it is against public policy to permit him to do this. In ascertaining what is the public policy of the State, we are permitted to look only to the constitution and the laws enacted in pursuance thereof. *Adams* v. *Bass,* 18 *Ga.* 130, 146, 164; *Smith* v. *DuBose,* 78 *Ga.* 413, 439-440 (3 S. E. 309, 6 Am. St. R. 260). If these do not condemn an act or a course of conduct, the courts are not authorized to decide cases based on what is supposed should be the dictates of a sound public policy. Under this view of the law, the executrix representing the

estate of the former clerk would be entitled to the sum in question, which is interest he caused to be earned on the deposits held by him. This conclusion is reached without regard to the ruling in *Renfroe* v. *Colquitt*, 74 *Ga.* 618 (supra), and without reference to the act approved March 16, 1933 (Ga. L. 1933, p. 78 et seq.), the terms of which act are not here applicable. I dissent.

REID, Chief Justice. My dissent is predicated on a view somewhat different from that expressed by Justice Grice. The moneys from which the interest arose were not public funds, but belonged to private persons. It is true the clerk was custodian by virtue of his office. He, although an insurer, did not in my opinion take title to the funds so deposited with him. But the only duty resting on him was their safekeeping. He met every demand of the law when he at the proper time accounted for that which was turned over to him. It is conceded that the clerk has done exactly that in this case. He did not, as I see it, loan the money out in the ordinary sense or use it in speculation for personal gain. He did not convert it to his own use, nor did he violate any law or duty in making the deposit in the bank. He kept it carefully segregated, apart from any personal funds; and while the account was in his name merely "as clerk," it at least showed an intention to separate it from personal funds. True, he might have kept it in a safe or rented a safety-deposit box, the expense of which would have been on him. He might have had it insured or taken an indemnity policy to protect him. It is also to be noted that this interest was received on the *aggregate* of such funds separately deposited with him, and which, separately, might not have earned interest. Even if in the broad, general sense, this custodian should be regarded as a trustee, the measure of his liability is wholly different from the ordinary trustee dealt with in *Perdue* v. *McKenzie*, supra. His duties are entirely different, and here he has violated none. If any person could claim this interest, it would be only the person to whom belongs the identified fund which earned the interest. The successor clerk is neither responsible for nor entitled to such funds.