REUBEN BORDY, APPELLEE, v. ROBERT SMITH, APPELLANT, COUNTY OF DOUGLAS, APPELLEE, SCHOOL DISTRICT OF OMAHA ET AL., INTERVENERS AND APPELLANTS, METROPOLITAN UTILITIES DISTRICT, INTERVENER AND APPELLEE.

34 N. W. 2d 331

Filed October 15, 1948.   Nos. 32448, 32449, 32450.

*Swarr, May, Royce, Smith & Story,* for appellant Robert Smith. *W. Ross King, Edward F. Fogarty, Edward Sklenicka, James M. Paxson,* and *Herbert M. Fitle,* for appellants School District of Omaha and City of Omaha.

*James J. Fitzgerald, Ephraim L. Marks, Alfred A. Fiedler,* and *Dana Van Dusen,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

This action involves the question as to who is entitled to the sum of $10,328.35 received by Robert Smith, defendant and appellant, as interest on the proceeds of tax foreclosure bids delivered to him by the sheriff of Douglas County.

The stipulated facts are that defendant and appellant, Robert Smith, as clerk of the district court for Douglas

County, received from the sheriff of said county, pursuant to the provisions of section 77-1912, R. S. 1943, the proceeds of. all bids in tax foreclosures instituted by Douglas County. . While holding these funds, pending the ultimate disposition thereof, appellant invested part of the funds in United States Treasury certificates. It is the interest received from these investments, during the period from October 2, 1943, to June 6, 1947, that is here involved.

The trial court held that the funds belonged to Douglas County. From this holding the defendant Robert Smith, clerk of the district court for Douglas County, the School District of Omaha, an intervener, and the City of Omaha, an intervener, have appealed. For convenience we shall refer to the parties as clerk, county, city, and school district.

Prior to September 7, 1947, the effective date of what are now sections 77-2326.01 to 77-2326.09, inclusive, R. S. Supp., 1947, passed by the 1947 Legislature, there appears to have been no statutory provisions providing a depository for funds held by clerks of. the district courts. In the absence of such statute a public officer in this state is ·an insurer of funds which are entrusted to his care by virtue of his office. As stated in Village of Hampton v. Gausman, 136 Neb. 550, 286 N. W. 757: "The liability of a public officer in this state for funds entrusted to his care by virtue of his office is that of an insurer, except as it has been modified by statute. Ward v. School District No. 15, 10 Neb. 293, 4 N. W. 1001; Thomsen v. Hall County, 63 Neb. 777, 89 N. W. 389." See, also, Knox County v. Cook, 126 Neb.. 477, 253 N. W. 649. In City of Cozad v. Thompson, 126 Neb. 79, 252 N. W. 606, we approved the following from 22 R. C. L. 226, § 5: "He is answerable in all events. The theory on which the doctrine is based is that a public officer having public moneys in charge is a debtor bound to account and pay over the exact sums received." ·

There are jurisdictions wherein the· courts hold that

where the officer is thus absolutely liable for the moneys received by him he thereby becomes, in effect, the owner thereof and can keep any interest earned thereon. Therein he is only required to account for the money received and this even when the statutes make it an offense for the officer to use or loan the funds. As stated in Commonwealth v. Godshaw, 92 Ky. 435, 17 S. W. 737, wherein a recovery of the interest was denied: "The whole theory of the public official being bound for the money at all hazards is, that by the terms of his bond he agrees to pay the money over when collected without any condition annexed to his liability, and that as between the State and the official in determining this liability it must be treated as his money and not that of the State. * * * It results, therefore, that no recovery can be had for this interest either of the principal or the surety collected up to the 14th of September, 1886." As stated in State v. Walsen, 17 Colo. 170, 28 P. 1118: "In those jurisdictions where the liability of the officer is held to be absolute, no action can be maintained against him for the interest or profits made upon the money, in the absence of a statute authorizing such recovery." See, also, Maloy v. County Commissioners, 10 N. M. 638, 62 P. 1106.

Under this theory our holding in Scotts Bluff County v. McHenry, 130 Neb. 717, 266 N. W. 586, which is an identical fact situation, would be correct. Therein we held: "Interest received on public funds held by a county officer is a perquisite."

However, we do not think these cases reflect the true relationship and liability of the public officer. As stated in Rhea v. Brewster, 130 Iowa 729, 107 N. W. 940:

"As noted, these decisions rest upon the assumption that the obligation of the official is that of a private indebtedness, and hence the rule which requires the trustees in all cases to account for profits does not apply. We think that the clerk of the district court in receiving fees or moneys by virtue of his office does not become the owner thereof; * * *. He does not become the owner

of the property or moneys received. He is simply the custodian thereof. He receives his compensation from the county and is bound not merely to pay, but to account and pay over all moneys coming into his hands by virtue of his office.

"The true test, as it seems to us, is not whether he is absolutely liable to account, but whether he is the owner of the funds in his hands. If he is not such owner and the moneys coming into his hands, belong to the county or some one else, any increment thereto is and should be treated as a part of the principal. This is the view approved in the better considered cases, and the only one consonant with sound public policy. In an early New York case (Board of Supervisors v. Wandel, 6 Lans. (N. Y.) 33; Id., 59 N. Y. 645) a county treasurer was held liable for interest received by him on county funds, not only because of his fiduciary relation, but for the interest belonging to the county, the court saying: 'The notion that a public officer who would keep back interest which he has received upon a deposit of public moneys as a prerequisite of office, is an affront to the law and morals; * * * ' "

As stated in State v. Anderson, 117 Kan. 117, 230 P. 315: "The weight of authority, although there is some difference of opinion on the subject, is to the effect that interest paid by a bank on money in the custody of an officer does not belong to him, but to the beneficial owner of the fund. (29 Cyc. 1425; 22 R. C. L. 465.) Various reasons are given for this view, some of them more or less technical, involving the question of where the title is vested and the character of the trust. Regardless of analogies and of the words that may be used to describe the relations of the persons concerned, we think the right of the real owner of the fund to whatever interest is paid upon it may be best sustained on the ground that it is against good conscience that one under a public duty to care for money intrusted to him by virtue of his office shall receive and keep for his own benefit what it has

earned during his custody. That the practice may have been tolerated and condoned does not affect the matter. We do not believe that enlightened public sentiment has countenanced it."

We think the reasoning in Adams v. Williams, 97 Miss. 113, 52 So. 865, 30 L. R. A. N. S. 855, is particularly applicable and correctly reflects the relationship and liability of a public officer with reference to the earnings on any funds he may receive as such officer. Therein it is said: "It is a very singular confusion of mind into which some courts have fallen, when they say, as is argued for appellee, that, if an officer is absolutely bound as an insurer, therefore any interest which he receives on the money is his, and not the state's. As well remarked by Judge Newman, quoted in the McFetridge case: 'Nobody ever heard of the claim that a common carrier, by reason of its absolute liability, became the owner of the goods it carried.' And in the main case (84 Wis., at page 517, 54 N. W., at page 11, 20 L. R. A., at page 237) the court says: 'While such absolute liability of the treasurer will be assumed, for the purposes of the case, it seems to us that no such conclusion necessarily results therefrom. The treasurer may well be held liable absolutely for all money of the state coming into his hands, and be held liable also for interest on deposits. As stated in another form, such absolute liability does not estop the state to maintain that such interest was received by the treasurer, by virtue of his office, and belongs to his office.' And this we think is plainly sound. It is a complete non sequitur to say that, because Williams was an absolute insurer, therefore the interest belonged to him. The two principles have no relation whatever to each other. Once settled clearly and definitely whose money the principal sum was, the interest necessarily belongs to that person as an increment to the principal fund, and to argue to the contrary is simply to lose one's self in a metaphysical fog of sophistry, failing to give effect to the central principle of right and

justice, making the interest the property of the party who owned the principal sum." To like effect and for further discussion of this principle see Williams v. Hooks, 199 N. C. 489, 154 S. E. 828; Puckett v. Walker, 194 Ga. 401, 21 S. E. 2d 713; State v. McFetridge, 84 Wis. 473, 54 N. W. 1, 20 L. R. A. 223; Vansant v. State, 96 Md. 110, 53 A. 711. As stated in Nemaha Valley Drainage District v. Nemaha County, 100 Neb. 64, 158 N. W. 438: "It is the general rule, where there is no statute to the contrary, that interest becomes a part of the fund by whose investment it was produced, * * *."

Pursuant to this conclusion the interest, as an increment thereof, goes to those to whom the principal sum belongs. It necessarily follows that it cannot be a perquisite of the office, whether that of a clerk of the district court or otherwise, and our holding to that effect in the case of Scotts Bluff County v. McHenry, *supra,* is therefore overruled.

Our opinion in the case of County of Wayne v. Bressler, 32 Neb. 818, 49 N. W. 782, is also cited as authority for the proposition that this action cannot be maintained. That case, although involving a county treasurer, is similar in fact. A reading of the opinion does not clearly reflect the basis of the holding. The opinion would indicate that it was based on the proposition that no civil action would lie because of the relief granted by section 124 of the criminal code, which is now section 28-543, R. S. 1943. It also mentions the case of State v. Keim, 8 Neb. 63, to the effect that an unauthorized or unsatisfied loan or deposit of public money constitutes no cause of action in the name of the state and cites subsequent authorities based thereon. However, in Farmers & Merchants Banking Co. v. City of Red Cloud, 62 Neb. 442, 87 N. W. 175, we overruled State v. Keim, *supra.* Therein we held: "When an officer charged with the collection and custody of public money unlawfully deposits the same in a bank for safe-keeping, and the same is subject to the check or demand of such officer, the

state, county or other municipal body for whom such officer acted may maintain an action in its own name to recover such deposit. State v. Keim, 8 Nebr., 63, overruled."

We do not think the criminal statute, section 28-543, R. S. 1943, which, upon conviction thereunder, imposes "a fine equal to double the amount of money or other property so embezzled" in any way limits or restricts the right of the proper parties to maintain a civil suit to collect the interest or increment to funds which are actually theirs but which a public officer may have invested contrary to the provisions thereof. However, if it can be said that the case of County of Wayne v. Bressler, *supra,* intended to hold that because of the heretofore quoted provisions of the criminal statute no civil suit can be maintained against public officers to recover for funds owing, such as here, we think it is in error and should be and is overruled.

The clerk suggests that a decision to the effect that the interest money belongs to the beneficial owners would present serious difficulties in determining who are such owners and in computing how much each would be entitled to receive. Such difficulties, if actually present, would be of no benefit to the clerk because the interest goes with the principal to the owners thereof and no difficulty in determining such owners and their proportionate share thereof would entitle the clerk to keep such funds. The same is true of the county's reference to the difficulty of division as a basis for letting them keep the whole thereof. See, City of Chicago v. Danisch, 224 Ill. App. 454; Puckett v. Walker, *supra.*

Since the interest passes to the beneficial owners of the funds and is not a perquisite of the office there is no merit to the county's claim that it should receive the same under the provisions of section 33-106, R. S. Supp., 1947, which provides that: "The clerk of the district court of each county shall in no case retain for his own use any fees, revenues, perquisites or receipts, fixed,

enumerated or provided in this or any other section of the statutes of the State of Nebraska, but shall * * * pay the same to the county treasurer who shall credit the same to the general fund of the county." Nor is this interest revenue or receipts as fixed, enumerated or provided for by the statutes of the state but it is interest on unauthorized loans clearly not within the contemplation thereof.

As already stated, the sum of $10,328.35 was received by the clerk as interest on United States Treasury certificates in which, during the period from October 2, 1943, to June 6, 1947, part of the funds received in tax foreclosures was invested.

We direct that this interest be divided proportionately between the beneficial owners of the funds which had been paid to the clerk in tax foreclosure cases on and prior to October 2, 1943, and then held by him, and all such funds paid to him thereafter, up to and including June 6, 1947. In making such division each party is to receive that proportionate share of the interest as the amount he has or may receive from the tax foreclosures, from which said funds as hereinbefore defined were received, bears to the total thereof.

As to who is entitled to the benefit of this interest, which attaches itself to the principal, it would appear that it should be distributed to several different groups. In those cases wherein the property was or may be redeemed or the sale was or may be set aside, the bid necessarily was or will be returned to the bidder. Consequently, in such cases the bidder is entitled to his proportionate share of the interest. Where the sale was or may be confirmed and the proceeds of the bid distributed the interest should be distributed in the same proportion as the bids are distributed. In some instances this may result in some owner of an equity of redemption or a lienholder being entitled to participate if the amount of the bid exceeds the total of costs, general taxes, and special taxes, if any.

280

As to the amount distributed upon confirmation to apply on general taxes the interest proportioned thereto should flow to the various political subdivisions that are entitled thereto. It would appear that the division of such funds are proportioned as follows: 20 percent to the county and 80 percent to the city. Of the amount received by the city, the school district receives 44.8276 percent thereof and the Municipal University of Omaha 3.4483 percent, the balance being held by the city. As to whether or not there is any distribution of the share received by the county the record does not show. In any event the interest allocated to the amount applied on general taxes should be distributed proportionately to the recipients of the taxes.

The case is therefore affirmed insofar as it holds that the clerk is not entitled to the fund but is modified as to whom it should be distributed with directions that a decree be entered ordering distribution in accordance herewith.

AFFIRMED AS MODIFIED AND
REMANDED WITH DIRECTIONS.