**BOARD OF EDUCATION, WOODWARD PUBLIC SCHOOLS, INDEPENDENT SCHOOL DISTRICT NO. 1, WOODWARD COUNTY, Oklahoma; Board of Education, Mooreland Public Schools, Independent School District No. 2, Woodward County, Oklahoma, Appellees,**

v.

**Mary Jane HENSLEY, Treasurer of the County of Woodward, State of Oklahoma, Appellant.**

No. 58037.

Court of Appeals of Oklahoma, Division No. 4.

May 17, 1983.

Released for Publication by Order of the Court of Appeals June 17, 1983.

Tom Hieronymus and Duke Halley Hieronymus,. Hodgden, Halley & Meyer Woodward, for appellees, Woodward Public Schools and Mooreland Public Schools, Woodward County.

L. Jack Barton, Dist. Atty., Crieg Rittenhouse, Asst. Dist. Atty., Woodward, for appellant, Mary Jane Hensley, County Treasurer of Woodward County.

Robert H. Macy, Dist. Atty., Jimanne Harris Mays, Asst. Dist. Atty., Oklahoma City, for amicus curiae, Joe B. Barnes, County Treasurer of Oklahoma County.

David L. Fist, J. Douglas Mann and John G. Moyer, Rosenstein, Fist & Ring'old, Tulsa, for amici curiae, Independent School Districts Nos. 1, 2, 3, 5, 9 and 11 of Tulsa County.

STUBBLEFIELD, Judge.

This case requires the interpretation of various statutes dealing with ad valorem taxes paid under protest and the distribution of interest earned on such funds pending the determination of such protest.

I

On April 1, 1980, Oklahoma Nitrogen Company paid to the County Treasurer of Woodward County ad valorem taxes for the year 1979 in the amount of $275,351.69. This sum was paid under protest. Oklahoma Nitrogen brought an action in the District Court of Woodward County alleging that an unconstitutional ratio had been applied in determining the assessed value of its property.

On May 12, 1981, the trial court ordered a refund to Oklahoma Nitrogen Company of $73,484.40 and the balance of the protest funds to be apportioned by the county treasurer to the various governmental units of the county entitled thereto. The balance of the protest funds, $201,867.29, was apportioned in the following amounts:

| | | | |
|---|---|---|---|
| (1) | To Independent School District No. 1 | — | $154,885.26 |
| (2) | To the Woodward County Board of County Commissioners | — | 43,845.58 |
| (3) | To Independent School District No. 2 | — | 1,458.09 |
| (4) | To Independent School District No. 3 | — | 1,057.58 |
| (5) | To Independent School · District No. 5 | — | 620.78 |

Independent School District No. 1, the Woodward Public Schools, filed a petition in district court on July 27, 1981, alleging that the Woodward County Treasurer had invested the protested sums during the period Oklahoma Nitrogen's protest was pending. The Woodward Public Schools sought a declaratory judgment that the interest earned on its share of the distributed funds should be distributed to it along with its portion of the principal. The other Woodward County school districts, along with Oklahoma Nitrogen Company, had been joined as parties defendant with Mary Jane Hensley, Wood-

ward County Treasurer. The school districts all subsequently joined in the Woodward Public Schools' prayer for the distribution of the interest earned.

In the course of this action the Woodward County Treasurer maintained that pursuant to 62 O.S.Supp.1974 § 348.1, she had been authorized to invest such funds and that the interest from this investment could properly be placed in the county general fund. The school districts relied upon the provisions of 70 O.S.1971 § 691, to support their claim that the interest gained on the invested funds should be apportioned and credited to the common school fund.

The trial court entered its order and judgment in this case on December 30, 1981. In this order the trial court noted that the county treasurer (the predecessor of the treasurer in this action) had commingled the taxes paid under protest with other funds in the treasurer's possession and that all parties accepted a figure of 10.36 percent as the earnings returned on this investment. The trial court then engaged in a lengthy analysis of the provisions of 62 O.S.Supp.1974 § 348.1, and 70 O.S.1971 § 691, in an attempt to reach a conclusion as to which statute controlled the interest earned and thus determined the proper distribution of that interest. The trial court found that prior to apportionment of funds received by the county treasurer interest returned on investment of money is controlled by 70 O.S.1971 § 691, and that that interest thus belonged to the school districts. The provisions of 62 O.S.Supp.1974 § 348.1, were found to apply only to monies which have been apportioned but which are not, at the time, needed for the purposes for which they are to be expended. The trial court found that, as the protested funds had not been apportioned at the time of their investment, all the interest earned was to be credited to the school districts.

The county treasurer now seeks review of the trial court's ruling on the grounds that the judgment is contrary to the law of the State of Oklahoma.

## II

■ We initially state that we find no error in the trial court's construction as to the general applications of 62 O.S.Supp.1974 § 348.1, and 70 O.S.1971 § 691, and find his ruling in conformance with the standards set out in *AMF Tubescope Co. v. Hatchel,* Okl., 547 P.2d 374 (1976). We do, however, find error in the application of these general statutes to the case at hand. It is a well settled principle of statutory construction that where there are special statutory provisions which clearly include the matter in controversy and provide different rules and procedures from those in general statutory provisions the special statutory provisions are to be applied. *Southwestern Bell Telephone Co. v. Oklahoma County Excise Board,* Okl., 618 P.2d 915 (1980).

■ In the present case the trial court applied statutes which *generally* relate to the handling of funds in the custody of the county treasurer and the investment and distribution of interest earned from those funds. There are statutes which *specifically* apply to the taxes paid under protest in this case. Title 68 O.S.1971 § 2467(b), provides:

"When such taxes [assessed against property of taxpayer who has appealed amount of assessment] are paid, the persons paying the same shall give notice to the county treasurer that an appeal involving such taxes has been taken and is pending, and that the tax, or a specified portion thereof, is being paid under protest, and shall attach to such notice a copy of the petition filed in the court in which the appeal was taken. *It shall be the duty of such treasurer to hold such taxes so paid under protest separate and apart from other taxes collected by him.* If upon the final determination of any such appeal, the court shall find that the property had been assessed at too great an amount, the board of equalization from whose order the appeal was taken shall certify the corrected valuation of the property of such taxpayers to the county assessor, in accordance with the decision of the court, and shall send a copy of such certificate to the county treasurer. Upon receipt of the corrected certificate of valuation the county assessor shall compute and certify to the county treasurer the correct amount of taxes payable by such taxpayer. *The difference between the amount paid and the correct amount payable shall be refunded by the treasurer to the taxpayer upon his filing a proper verified claim therefor, and the remainder paid under protest shall be apportioned as provided by law."* (emphasis added)

Title 68 O.S.1971 § 2469, provides:

"In all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes at the time and in the manner provided by law, and shall give notice to the officer collecting the taxes showing the grounds of complaint and that suit will be brought against the officer for recovery of them. *It shall be the duty of such collecting officer to hold such taxes separate and apart from all other taxes collected by him, for a period of thirty (30) days, and if within such time summons shall be served upon such officer in a suit for recovery of such taxes, the officer shall further hold such taxes until the final determination of such suit.* All such suits shall be brought in the court having jurisdiction thereof, and they shall have precedence therein. If, upon final determination of any such suit, the court shall determine that the taxes were illegally collected, as not being due and owing, the court shall render judgment showing the correct and legal amount of taxes due by such person, and shall issue such order in accordance with the court's findings, and if such order shows that the taxes so paid are in excess of the legal and correct amount due, the collecting officer shall pay to such person the excess and shall take his receipt therefor." (emphasis added)

Further, 68 O.S.Supp.1974 § 2479, also speaks of making a refund of taxes paid under protest out of the protest fund.

■ The fact that the county treasurer wrongfully commingled the funds paid under protest does not change the character of the funds. The legislative intent is clearly established by the foregoing statutes that such taxes paid under protest are to be treated as a distinct fund separate from the general funds of the county until the final determination of the protest.

■ The interest earned on this separate and distinct fund prior to its apportionment becomes a part of the principal of the fund which generates it. *City of New Orleans v. Fisher,* 180 U.S. 185, 21 S.Ct. 347, 45 L.Ed. 485 (1901); *State ex rel. Board of County Commissioners of Bernalillo County v. Montoya,* 91 N.M. 421, 575 P.2d 605 (1978); *State Highway Commission of Missouri v. Spainhower,* 504 S.W.2d 121 (Mo.1973); *Metropolitan Water District of Southern California v. Adams,* 32 Cal.2d 620, 197 P.2d 543 (1948); *Bordy v. Smith,* 150 Neb. 272, 34 N.W.2d 331 (1948); *Lawson v. Baker,* 220 S.W. 260 (Tex.Civ.App.1920); *State ex rel. School City of Gary v. Swanson,* 182 Ind. 582, 107 N.E. 275 (1914).

■ When a tax protest is filed it becomes the ministerial duty of the county treasurer to hold the money so paid. The money is held in trust by the county, either for refund or for the proper fund to which it respectively belongs. *Board of Education of Oklahoma City v. Thurman,* 121 Okl. 108, 247 P. 996 (1926). Just as the county treasurer could not defeat this trust by paying out the money prior to the determination of the protest the trust could not be defeated by commingling the money with other funds.

■ Title 68 O.S.1971 § 2467(b), mandates that, upon the final determination of the protest, the portion not refunded then be apportioned as provided by law. The power to apportion does not include the

power to withhold any portion of that which is to be apportioned. *Excise Board of Tulsa County v. City of Tulsa,* 180 Okl. 248, 68 P.2d 823 (1937). When the final determination of Oklahoma Nitrogen's protest was made it was the duty of the county treasurer to apportion the entire fund, consisting of both principal and the interest it had earned, to the various entities entitled to the fund. Thus if the school districts are to receive 80 percent of the principal fund they are also to receive 80 percent of the interest earned by the total.

Accordingly the order and judgment appealed from is hereby vacated and the cause remanded to the trial court with instructions to enter an order and judgment consistent with this opinion.

DeMIER, J., concurs.

BRIGHTMIRE, P.J., dissents.

BRIGHTMIRE, Presiding Judge, dissenting.

I agree with the idea expressed in the court's opinion that if protest funds are put out at interest by the county treasurer, the interest earned should follow the deposited principal. For this same reason I disagree with a recent opinion handed down by division 2 of this court[1] holding that Oklahoma Nitrogen Co.—the protesting taxpayer which deposited the fund forming the subject matter of the present lawsuit—was not entitled to receive interest on the amount it was refunded because of the decision in the early case of *Eaton v. St. Louis-San Francisco Ry.,* 122 Okl. 143, 251 P. 1032 (1925). *Eaton* is clearly distinguishable from the situation facing the court in both the Oklahoma Nitrogen case and here, in that the treasurer in *Eaton* did not invest the protest money in an interest bearing account. Thus, insofar as the protesting taxpayer in *Eaton* sought to obtain interest on the protest fund payable with tax money, the 1925 decision was entirely correct.

---

1. *Oklahoma Nitrogen Co. v. Lucas,* No. 57,478

(Okl.App., Div II April 5, 1983).

Here, however, the issue is significantly different. The protest fund did draw interest. Since Oklahoma Nitrogen did not get the interest that I think it was entitled to, the money it should have received retained, I would hold, its interest characteristic and became subject to allocation as such, per provisions of 70 O.S.1981 § 691. Under these circumstances, it seems to me, the school districts are entitled not only to 80 percent or so of the interest earned by their apportioned shares, but they are entitled to the rest of it under the general fund statutes relating to interest earmarking for school districts.

I would affirm the trial court judgment.